[No. 60646-3.   En Banc.   February 23, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. LYNN RODERICK LOUGH, *Petitioner*.

*Allen & Hansen, P.S.,* and *David Allen,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

*George Wm. Cody* of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

Andersen, J.* —

## Facts of Case

The Defendant, Lynn Roderick Lough, was convicted by a jury of attempted second degree rape, indecent liberties and first degree burglary stemming from events that occurred on July 22, 1988.

The Defendant was a paramedic employed by King County Emergency Medical Services. He met P.A., the complaining witness, while he was teaching an emergency medical training class at the company where she worked. The Defendant and P.A. made a date to meet at her home on July 22, 1988, to watch a rented video. P.A. testified that the Defendant mixed her a drink and that shortly after beginning to drink it she felt dizzy and very disoriented. She testified that her memory was confused after this, but that she recalled her sweatpants being pulled down and the Defendant's genitals in her hands and by her face. She testified that when she awoke, she was nude from the waist down and that the Defendant was gone. She testified that she found her pants and underpants folded on the arm of the sofa.

The Defendant denied he had drugged or assaulted P.A. He testified that after he and P.A. had several drinks, he and P.A. started kissing and that they had consensual sexual intercourse. P.A. testified that at 8 a.m. the following

---

*Judge James A. Andersen is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).

morning, the Defendant telephoned and asked her how she was feeling. When she said she was confused about what had happened, he assured her nothing had happened. The Defendant denies having said this. P.A. expressed concern about the evening to friends, and asked the advice of a friend who was a police officer, but did not officially report it to the police at that time. In 1990, when she read in a newspaper article about a King County paramedic who was being investigated for drugging and raping several women, she contacted the police and told them about the incident in 1988. The State charged Lough with indecent liberties, attempted rape and burglary in the first degree.

Prior to the beginning of trial, the Defendant moved to exclude testimony concerning his alleged druggings and rapes of four other women. The trial court held a pretrial hearing and ruled that the evidence was admissible for the purpose of showing a common scheme or plan to drug and sexually abuse women. At trial, the four other women testified that while they had been in relationships with Lough, he had slipped them drugs in drinks and raped them. None of these other women knew or was known by the complaining witness. The four witnesses each testified that the Defendant had surreptitiously drugged and raped them.

M. testified that sometime in 1978 or 1979, Lough came to the home where she was staying and told her she looked tired and that she probably needed an iron supplement. He then gave her a glass of orange juice in which he told her he had put an iron supplement. She testified that shortly after consuming the drink, she passed out and remembered waking up during this period of unconsciousness and semi-consciousness because of the pain of anal intercourse. She testified that later when she accused Lough of raping her, he told her that if she told anyone that, he would just deny it and she could not prove it and so she had no choice. She said that when she tried to call a friend regarding this event, Lough took the phone, threw her to the floor and kicked her. She testified she went to the hospital but, due to embarrassment, she did not inform the doctor of the anal rape. She testified

that several years later when she threatened to report the rape, the Defendant told her that he would not bother her if she did not report it. She did not report it to the police until after the police contacted her because of a similar alleged incident reported by another woman. The Defendant denied he had ever drugged or raped M. or intentionally hit her, although he said he might have hit her accidentally once when he was trying to take the phone away from her.

D. testified that one evening in 1980, Lough gave her a drink and she became dizzy. She testified to remembering Lough trying to kiss her and that she passed out and awoke naked on her bed. She testified that she found the clothes she had been wearing neatly folded on a footstool. She testified that when she awoke her anus was very sore and she was bleeding from her anus and vagina. She said that when she confronted Lough, he told her that no one would ever believe her if she reported it. Lough denied ever drugging or having intercourse with D.

K. testified that sometime in 1986, Lough gave her some pain medication for a broken arm which put her to sleep. She testified that she awoke to find her clothing removed and her rectum bleeding. She testified that when she confronted Lough about the incident, he claimed that they had consensual anal sex. Lough testified that he never gave K. any medication without her knowledge and that they had consensual anal intercourse two or three times.

P. testified that one night in 1988 Lough gave her some juice and she went to sleep. She testified that she awoke with a terrible pain and that blood was coming out of her anus. When she confronted Lough he gave a noncommittal response and she testified that he told her that no one would believe her if she reported the rape. Lough denied ever drugging or having anal intercourse with P.

The jury convicted the Defendant on all counts charged in connection with the incident involving P.A. and he was sentenced to an exceptional sentence of 60 months. The Defendant appealed his conviction to the Court of Appeals, contending that the trial court committed error by admitting the

testimony of the four women who testified that the Defendant had surreptitiously drugged them and raped them while they were under the influence of the drugs. He also challenged the length of his sentence. The Court of Appeals affirmed his convictions, finding that the evidence of his prior misconduct with the other women was admissible for the purpose of proving the existence of a common plan or scheme and therefore admissible under Rule of Evidence 404(b). The Court of Appeals reasoned that the evidence showed that the Defendant was the mastermind of a plan to utilize his special skill for the purpose of drugging and sexually assaulting women he knew with a drug that would render his victims somnolent and at least partially amnesiac.[1] The Court of Appeals also upheld the trial court's imposition of an exceptional sentence.

We accepted review to consider when evidence is admissible under ER 404(b) for the purpose of proving a common plan or scheme.

## ISSUE

Was evidence that the Defendant had previously drugged and raped four other women, while in relationships with them, admissible evidence in this case for the purpose of showing a common plan or scheme under ER 404(b)?

## DECISION

CONCLUSION. We conclude that a common plan or scheme may be established by evidence that the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances. Proof of such a plan is admissible if the prior acts are (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

---

[1]*State v. Lough*, 70 Wn. App. 302, 321, 853 P.2d 920 (1993).

tion, plan, knowledge, identity, or absence of mistake or accident.

■■ Rule 404(b) thus provides that prior misconduct is not admissible to show that a defendant is a "criminal type", and is thus likely to have committed the crime for which he or she is presently charged. However, crimes or misconduct other than the acts charged may be admitted for a variety of other reasons including the proving of a scheme or plan of which the offense charged is a manifestation.[2] When the very doing of the act charged is still to be proved, one of the facts which may be introduced into evidence is the person's design or plan to do it.[3] If the evidence is offered for a legitimate purpose, then the exclusion provision of rule 404(b) does not apply.

To admit evidence of other crimes or wrongs under Washington law, the trial court must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged and (3) weigh the probative value of the evidence against its prejudicial effect.[4] Additionally, the party offering the evidence of prior misconduct has the burden of proving by a preponderance of the evidence that the misconduct actually occurred.[5]

The trial court scrupulously followed the criteria set forth by this court to be applied when admitting ER 404(b) evidence. The court in its ruling first identified the purpose for which the evidence was admitted.

> [T]he offer is for the purpose of providing evidence in this case of common scheme or plan; i.e., a larger criminal design of which the charged crime is only one part. There must be enough specific and

---

[2]*See, e.g.,* 5 Karl B. Tegland, Wash. Prac., *Evidence* §§ 114, 117, at 383, 404 (3 d ed. 1989).

[3]2 John H. Wigmore, *Evidence* § 304, at 249 (James H. Chadbourn rev. ed. 1979).

[4]*State v. Dennison,* 115 Wn.2d 609, 628, 801 P.2d 193 (1990); *State v. Smith,* 106 Wn.2d 772, 776, 725 P.2d 951 (1986); *State v. Lane,* 125 Wn.2d 825, 831, 889 P.2d 929 (1995).

[5]*State v. Benn,* 120 Wn.2d 631, 653, 845 P.2d 289, *cert. denied,* 114 S. Ct. 382 (1993); *State v. Tharp,* 96 Wn.2d 591, 593-94, 637 P.2d 961 (1981); *State v. Bythrow,* 114 Wn.2d 713, 719, 790 P.2d 154 (1990).

unique features in common between the offenses to show that the plan or scheme was carried out by committing the charged offense. . . . In the instant case, the common scheme or plan is the overarching, pre-existing scheme or plan as follows. . . .

The control of women by rendering them unconscious by the surreptitious use of drugs for the purpose of abusing them sexually.[6]

We accepted review of this case because of a split of authority in Washington on the subject of evidence admitted under ER 404(b) used for the purpose of proving a prior plan or scheme.[7] A number of recent Court of Appeals decisions have allowed such evidence under certain circumstances.[8] However, there is also recent authority to the contrary.[9] The heart of the controversy involves the meaning of the word "plan".

■■■ There are two different situations wherein the "plan" exception to the general ban on prior bad acts evidence may

---

[6]Report of Proceedings (Sept. 10, 1990), at 3.

[7]*See Lough,* 70 Wn. App.at 318-19 (reviewing the conflicting decisions regarding ER 404(b) evidence).

[8]*See, e.g., State v. Bennett,* 36 Wn. App. 176, 672 P.2d 772 (1983) (evidence that the defendant previously gave food and shelter to two runaway street children in exchange for sex could be used as evidence of a common scheme or plan to provide food and shelter to two other runaway street children in exchange for sex at a trial charging a similar crime); *State v. York,* 50 Wn. App. 446, 749 P.2d 683 (1987) (separate incidents of sexual crimes against young scholarship students at the defendant's beauty school where the victims were accosted in a remote area of the school would have been admissible in separate trials as tending to show common scheme or plan), *review denied,* 110 Wn.2d 1009 (1988); *State v. Bacotgarcia,* 59 Wn. App. 815, 801 P.2d 993 (1990), *review denied,* 116 Wn.2d 1020 (1991); *State v. Roth,* 75 Wn. App. 808, 881 P.2d 268 (1994) (the evidence that indicated the defendant had killed his prior wife while on a hiking trip was admissible to prove a common scheme or plan in his trial for killing a subsequent wife during an outing on an inflatable raft, when he attempted to collect life insurance on each of them).

[9]*State v. Bowen,* 48 Wn. App. 187, 738 P.2d 316 (1987) (the fact that a physician fondled the breasts of two female patients whom he knew to be separated from their husbands was not admissible in evidence of a common scheme or plan to fondle the breasts of a third patient whom the doctor also knew to be separated from her husband); *State v. Lynch,* 58 Wn. App. 83, 792 P.2d 167 (several robberies of bank night deposit boxes by a person wearing a specific disguise, brandishing a specific gun and making a getaway on a specific bicycle were not admissible as tending to show a common scheme or plan to rob other night deposit boxes while wearing the same disguise, brandishing the same gun and making a getaway on the same bicycle), *review denied,* 115 Wn.2d 1020 (1990).

arise. One is where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan. There is no question that evidence of a prior crime or act would be admissible in such a case to prove the doing of the crime charged. A simple example would be a prior theft to acquire a tool or weapon to perpetrate a subsequently executed crime. The other situation arises when an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes. The question before us is whether prior similar crimes or acts are admissible to demonstrate the existence of a plan which the accused used to commit the charged crime. The Defendant urges us to hold that common scheme or plan evidence under ER 404(b) is admissible *only* if a causal connection exists between the prior acts and the act charged and that the prior act of misconduct must be done in preparation for the charged offense. We decline to set so artificial a restriction as we perceive no real benefit from it and recognize that it would often bar relevant and reliable evidence. Since there is a split of authority in this state on this issue and we do not find the Washington cases helpful, we look for insight to decisions from other jurisdictions.

The California Supreme Court has recently overruled cases which had come to the same result that the Defendant asks this court to reach here. In two prior cases, California had restricted the admission of uncharged misconduct evidence to instances in which the evidence demonstrated the existence of a grand design of which the charged and uncharged conduct were constituent pieces. In *People v. Ewoldt*, 7 Cal. 4th 380, 867 P.2d 757, 27 Cal. Rptr. 2d 646 (1994) the California Supreme Court overruled those cases and rejected the premise that to be admissible all the acts must be part of a single continuing conception or plot.[10] The court held that a common design or plan

---

[10]*See also People v. Carradus*, 29 Cal. App. 4th 1, 34 Cal. Rptr. 2d 459 (1994) (evidence of common design or plan does not require a single all-embracing plan or require unusual common features, but does require sufficient common features to support the inference the defendant employed the plan in committing the charged offense; court looks to the nature and degree of similarity of the charged offense and uncharged misconduct).

can be established by evidence reflecting that the defendant committed "markedly similar acts of misconduct against similar victims under similar circumstances".[11] The existence of a design or plan may not be proved just by a similarity of result, but may be proved circumstantially by evidence that the defendant has performed acts having "such a *concurrence of common features* that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (Italics ours.)[12]

Since the result in these kinds of cases will be largely dependent on the facts of each case, it is helpful to look at some of the cases where evidence of prior misconduct to prove a plan has been held admissible. The California Supreme Court illustrated its rule by describing several cases where prior acts were highly probative of whether the defendant had committed the charged crime. For example, evidence that the defendant's prior wife had drowned in the bathtub was admissible to show that a subsequent wife's drowning in the bathtub was not an accident when the defendant had collected large amounts of life insurance on each wife. The court in that case held that evidence of the defendant's prior conduct was admissible to establish a common design or plan to murder his wives for financial gain.[13]

*People v. Ing,* 65 Cal. 2d 603, 422 P.2d 590, 55 Cal. Rptr. 902 (1967) is a case strikingly similar to the case before us. In *Ing,* a woman consulted a physician and was admin-

---

[11]*People v. Ewoldt,* 7 Cal. 4th 380, 399, 867 P.2d 757, 27 Cal. Rptr. 2d 646, 656 (1994).

[12]*Ewoldt,* 7 Cal. 4th at 402 (quoting 2 John H. Wigmore, *Evidence* § 304, at 249 (James H. Chadbourn rev. ed. 1979)).

[13]*People v. Lisenba,* 14 Cal. 2d 403, 94 P.2d 569 (1939), *aff'd,* 314 U.S. 219 (1941). *See also People v. Peete,* 28 Cal. 2d 306, 169 P.2d 924 (1946) (when a defendant's conduct in connection with the previous crime bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design), *cert. denied,* 331 U.S. 783 (1947); *People v. Archerd,* 3 Cal. 3d 615, 477 P.2d 421, 91 Cal. Rptr. 397 (1970) (evidence that the defendant had murdered two of his wives and a nephew by the unusual means of administering a lethal dose of insulin was admissible to show a common plan or scheme).

istered an injection that caused her to "feel dizzy" after which the physician had sexual intercourse with her. The trial court admitted the testimony of two former patients who testified that the physician had administered an injection that rendered them unconscious and then had sexual intercourse with them. A former employee of the defendant also testified that the defendant had sexual intercourse with her after administering injections. The court ruled that the challenged evidence was admissible, stating: "In view of the striking similarities between the other offenses and the ones charged the evidence was relevant on the question of a common scheme or plan to commit rape . . .". *Ing*, 65 Cal. 2d at 612.[14]

The Minnesota Supreme Court also recently addressed this issue in *State v. Wermerskirchen*, 497 N.W.2d 235 (Minn. 1993). In that case, the State was prosecuting a defendant for the sexual abuse of his young daughter. Evidence was admitted that the defendant had previously abused his stepdaughter and two young nieces in a similar manner as that charged in the offense against his daughter. The Minnesota Supreme Court held that under ER 404(b), the similar sex-

---

[14]A large number of cases have held that when there are enough similarities between the charged crime and the prior misconduct, then the prior conduct may be admissible to prove the existence of a plan or scheme or design. *E.g., Rhine v. State*, 336 P.2d 913 (Okla. Crim. App. 1959) (four patients' testimony that the defendant physician had administered sleep-inducing drugs and then raped them was admissible to show a design, scheme or plan); *State v. Morowitz*, 200 Conn. 440, 512 A.2d 175 (1986) (prior drugging and sexual assault of a patient was admissible in a prosecution of a podiatrist for drugging and sexually assaulting a patient in a very similar manner); *People v. Balcom*, 7 Cal. 4th 414, 867 P.2d 777, 27 Cal. Rptr. 2d 666 (1994); *State v. Finley*, 85 Ariz. 327, 338 P.2d 790 (1959) (design or course of conduct of two rapes was remarkably similar and hence admissible); *State v. Valdez*, 23 Ariz. App. 518, 534 P.2d 449 (1975); *Williams v. State*, 110 So. 2d 654 (Fla. 1959) (where the circumstances of two rapes were very similar, the prior one was admissible to demonstrate the existence of a plan and to meet the anticipated defense of consent), *cert. denied*, 361 U.S. 847 (1959). *See* Timothy E. Travers, Annotation, *Admissibility, in Rape Case, of Evidence That Accused Raped or Attempted To Rape Person Other Than Prosecutrix*, 2 A.L.R.4th 330 (1980) (it is generally agreed that in the proper factual situation evidence that the accused has previously committed a similar but separate and independent crime is admissible for the purpose of establishing a common plan or scheme of the accused).

ual misconduct with the other young relatives was admissible to prove the corpus delicti or the doing of the act charged and to show the victim was not merely imagining or fabricating the sexual contact. The similarity of the behavior was sufficient to justify receiving the evidence under the common scheme or plan doctrine.

The Minnesota high court explained that in deciding the relevance of proposed other-misconduct evidence offered pursuant to rule 404(b), the preferred approach is for the trial court to focus on the closeness of the relationship between the other misconduct and the charged crimes in terms of time, place and modus operandi.[15] The closer the relationship, the greater is the relevance or probative value of the evidence and the lesser is the likelihood that the evidence will be used for an improper purpose. The court added that while passage of time may in some cases be a factor, the passage of a number of years may be without real significance if the older offense is part of a "pattern" of similar misconduct occurring over a number of years.[16] The Minnesota Supreme Court recognized in *Wermerskirchen* that some academic commentators would like the "common scheme or plan" doctrine to be given a very narrow application but that the modern decisions have tended to follow Professor Wigmore's view of admissibility of evidence of other sex crimes to prove common scheme or plan and to thereby prove the doing of the act charged. Professor Wigmore explained as follows:

> The committing of a single previous rape, or rape attempt, upon another woman may not in itself indicate such a design . . . Nevertheless, a single previous act, even upon another woman, *may*, with other circumstances, give strong indication of a

---

[15]*Wermerskirchen*, 497 N.W.2d at 240. The court warned against confusing the reference to modus operandi in its relevance analysis with the line of cases which readily upholds the admission of evidence of so-called "signature" crimes by the defendant to prove identity. *See also Ewoldt*, 7 Cal. 4th at 399, 27 Cal. Rptr. 2d at 656-57, holding it is relevant that the modus operandi of uncharged offenses committed by a defendant is markedly similar to the charged offense, even when the evidence is admitted not to prove identity or intent but to establish that the uncharged offenses and the charged offense are manifestations of a common design or plan.

[16]*Wermerskirchen*, 497 N.W.2d at 243 n.3.

design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.

Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character . . ., it may carry with it great significance as to a specific design or plan of rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings.

(Footnote omitted.) 2 John H. Wigmore, *Evidence* § 357, at 335-42 (James H. Chadbourn rev. ed. 1979).

The Minnesota court also notes that Professor Wright, while generally opposed to the admission of other-crime evidence to prove corpus delicti, concedes that the courts will admit other-crime evidence to prove the doing of the charged act where the evidence is highly probative or the need for such proof is unusually great and gives as an example such evidence in cases of sexual abuse of children.[17]

In the present case, the evidence at issue is repetitive and highly probative and the need for such proof is unusually great given that the victim's recall was diminished by the ingestion of the drugs. The purpose of ER 404(b) is to prohibit admission of evidence designed simply to prove bad character; it is not intended to deprive the State of relevant evidence necessary to establish an essential element of its case. Here the Defendant deprived the State of significant evidence of the victim's testimony by the way he committed the crime. He induced both physical helplessness and memory loss and confusion by administering the drugs. The pattern of inducing such a state in other victims is relevant to proving that the victim here was induced to helplessness and then sexually assaulted.

*State v. McKinney*, 110 N.C. App. 365, 372, 430 S.E.2d 300, 304 (1993) held that evidence of prior crimes, wrongs or acts is admissible if it is offered for a proper purpose, is relevant, has probative value which is not substantially outweighed by danger of unfair prejudice, and if requested, is

---

[17]*Wermerskirchen*, 497 N.W.2d at 240.

coupled with limiting instruction. This statement of the law regarding ER 404(b) evidence is in accord with Washington law.[18] The *McKinney* court explained that to be admissible, evidence of a defendant's prior sexual misconduct offered to show a common plan or scheme must be sufficiently similar to the crime with which the defendant is charged and not too remote in time. However, as the *McKinney* court also explained, while the lapse of time between instances may slowly erode the commonality between acts, when similar acts have been performed repeatedly over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan. We agree.

When a defendant's previous conduct bears such similarity in significant respects to his conduct in connection with the crime charged as naturally to be explained as caused by a general plan, the similarity is not merely coincidental, but indicates that the conduct was directed by design.[19] *People v. Ewoldt*, 7 Cal. 4th 380, 402-03, 867 P.2d 757, 27 Cal. Rptr. 2d 646, 658-59 (1994). To establish common design or plan, for the purposes of ER 404(b), the evidence of prior conduct must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.[20]

---

[18]*State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (trial court must identify purpose of evidence, determine relevance and balance probative value against potential prejudicial effect). *State v. Brown*, 113 Wn.2d 520, 529, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989) (the trial court should explain the purpose of the evidence and give a cautionary instruction to consider it for no other purpose).

[19]To the extent *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952) can be read to hold to the contrary, it is overruled.

[20]*People v. Ewoldt*, 7 Cal. 4th 380, 402, 867 P.2d 757, 27 Cal. Rptr. 2d 646, 659 (1994). *See People v. Balcom*, 7 Cal. 4th 414, 867 P.2d 777, 27 Cal. Rptr. 2d 666 (1994) (the fact two different rapes were done in a similar manner wherein the perpetrator gained control of the victim at gunpoint, raped her in her apartment, stole the victim's ATM card and obtained her PIN number, and escaped in the victim's car was admissible to demonstrate the existence of a common design or plan which was relevant to establish the defendant employed the same plan in committing the charged offense).

We conclude that the prior misconduct evidence was admitted for a proper purpose under the facts of this case. The evidence that this Defendant rendered four other women, whom he had relationships with, unconscious with drugs and then raped them is *not* admitted to establish that the Defendant has a criminal disposition or a bad character; it is admitted to show that he committed the charged offense pursuant to the same design he used in committing the other four acts of misconduct. The evidence is admitted to show plan, not propensity. In this case, the Defendant's history of drugging women, with whom he had a personal relationship, in order to rape them while they were unconscious or confused and disoriented evidences a larger design to use his special expertise with drugs to render them unable to refuse consent to sexual intercourse. A rational trier of fact could find that the Defendant was the mastermind of an overarching plan.

After determining the purpose for which the evidence was admitted, the trial court in its ruling considered the relevance of the prior incidents of drugging and sexually abusing other women.

> Thus, the evidence of the other incidents [is] relevant under Evidence Rule 401 in that the evidence has a tendency to make the existence of the truth of the charge more probable than it would be without the evidence.
>
> Also, it is of consequence to the outcome of the action. The testimony of [the victim] standing alone is more vulnerable to attack without the common plan evidence. She is the only witness, and her recall is vague and hazy, which could be assailed as resulting from drinking, falling asleep, manufactured or exaggerated. In addition, she did not report the incident until months later. Certainly the evidence of other similar incidents within the overarching common plan or scheme is circumstantial and corroborating evidence in support of her testimony, especially considering evidence that the defendant was a paramedic with some medical knowledge and training . . .

Report of Proceedings (Sept. 10, 1990), at 4-5.

█ The issue of relevance generally is to be determined by the trial court, with review limited to whether the trial court abused its discretion.[21] "Relevant evidence" means evidence

---

[21]*State v. Lane*, 125 Wn.2d 825, 831, 834-35, 889 P.2d 929 (1995); *State v. Bacotgarcia*, 59 Wn. App. 815, 824, 801 P.2d 993 (1990), *review denied*, 116 Wn.2d 1020 (1991); *State v. Wermerskirchen*, 497 N.W.2d 235, 243 n.3 (1993).

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. We conclude the trial court did not abuse its discretion in deciding that the evidence of prior druggings and rapes was relevant to the specific issue of whether the conduct on which the charge was based actually occurred or was, as the Defendant contended, a fabrication or mistake by the victim. The evidence was relevant to a material assertion of the Defendant that the victim had consented to sexual intercourse and to the question whether he rendered her so helpless that she was unable to refuse. The credibility of the complaining witness was difficult to assess because of faulty memory and the evidence of prior similar conduct was thus highly relevant to show the existence of a plan to drug, render unconscious and rape women with whom the Defendant had a personal relationship. The trial court did not abuse its discretion in deciding that the testimony of the other four women was relevant.

Evidence of prior misconduct is not admissible merely because it is relevant. Even when ER 404(b) evidence is admitted for a proper purpose and is relevant to a material issue in the case, the trial court must still weigh the probative value against its prejudicial effect. Evidence of prior misconduct is likely to be highly prejudicial, and should be admitted only for a proper purpose and then only when its probative value clearly outweighs its prejudicial effect.[22]

After determining the purpose of the evidence and its relevance, the trial court in this case correctly balanced the prejudicial effect with the probative value and concluded that only evidence that was clearly within the common plan, that is, drugging and sexual assault of women he was in a relationship with, was admissible. Other allegations of prior sexual misconduct and attempts by the Defendant to offer drugs to young girls were excluded. The trial court excluded testimony regarding the allegations that the Defendant had

---

[22]5 Karl B. Tegland, Wash. Prac., *Evidence* § 114, at 386 (3d ed. 1989).

exposed himself to a 12-year-old, that he had raped his sister, that he attempted to drug a 15-year-old and had stood next to her bed in his underwear, that he attempted to drug a different 12-year-old girl by giving her Sominex tablets, and that he fondled the pubic area of another 15-year-old while she was an overnight guest at his home. The trial court ruled that although this evidence of prior sexual misconduct might show the Defendant's disposition to commit sexual crimes, it was not within the plan sought to be proved and hence was inadmissible under ER 404(b).

■ Because substantial prejudicial effect is inherent in ER 404(b) evidence, uncharged offenses are admissible only if they have substantial probative value. The principal factor affecting the probative value of the evidence of the defendant's prior misconduct is the tendency of that evidence to demonstrate the existence of a common design or plan. In this case that tendency is very strong. The probative value of prior acts evidence increases further if independent evidence of additional instances of similar misconduct, committed pursuant to the same design or plan, are produced.[23] They were in this case. The trial court's balancing is reviewed for an abuse of discretion.[24] We conclude that the trial court did not abuse its discretion in excluding those episodes of alleged sexual misconduct that did not closely fit into the pattern of drugging and abuse within a personal relationship and in allowing those incidents which were very similar to the facts underlying the charged crime.

As explained in *State v. Tharp*, 96 Wn.2d 591, 596, 637 P.2d 961 (1981), the true test of admissibility of unrelated crimes is not only whether they fall into a specific exception, but whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged. The facts of this case make the evidence of the Defendant's prior conduct particularly necessary. Because the Defendant drugged his

[23]*Ewoldt*, 7 Cal. 4th at 405, 27 Cal. Rptr. 2d at 660.

[24]*E.g., State v. Robtoy*, 98 Wn.2d 30, 42, 653 P.2d 284 (1982); *State v. Roth*, 75 Wn. App 808, 823, 881 P.2d 268 (1994); *State v. Herzog*, 73 Wn. App. 34, 50, 867 P.2d 648, *review denied*, 124 Wn.2d 1022 (1994).

victims, rendering them unconscious or unable to clearly remember everything that happened, the evidence of many prior similar episodes to prove a plan was necessary and probative of the facts of the charged crime.

The trial court also repeatedly gave a limiting instruction to the jury, before each of the witnesses testifying to prior druggings and rapes and again in the instructions given to the jury by the court at the conclusion of the trial. In that limiting instruction, the judge told the jury that the evidence of the uncharged allegations could not be considered to prove the character of the Defendant in order to show that he acted in conformity therewith, and could only be considered to determine whether or not it proved a common scheme or plan. The record fails to support a contention that the ER 404(b) evidence was used by the jury for an improper purpose. The limiting instruction was given clearly and repeatedly and a jury is presumed to follow the trial court's instructions.[25]

As noted above, the party offering the evidence of prior misconduct has the burden of proving, by a preponderance of the evidence, that the misconduct actually occurred.[26] On appeal, a finding that the misconduct actually occurred will be affirmed if supported by substantial evidence in the record.[27]

In this case, four women testified that Lough had drugged and raped them and several testified that Lough warned them not to report the rapes because no one would believe them. Having reviewed the entire record, we conclude the State carried its burden in that the evidence of the prior misconduct is supported by substantial evidence given by the prior victims.

We conclude that the evidence of prior conduct was proved by a preponderance of the evidence, was admitted for the proper purpose of showing a prior plan, that the trial court

---

[25]*State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).

[26]*State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289, *cert. denied*, 114 S. Ct. 382 (1993); *State v. Bythrow*, 114 Wn.2d 713, 719, 790 P.2d 154 (1990).

[27]*Benn*, 120 Wn.2d at 653.

did not abuse its discretion in concluding the evidence was relevant and that its probative value outweighed its prejudicial effect. Five women testified to similar episodes of drugging and rape. None of the other four women knew or were known by the victim in the present case. Because of the Defendant's method of rendering his victims unconscious before he assaulted them, a jury might well fail to believe any one of these individual women. But, when five women step forward and swear that this Defendant surreptitiously drugged them, rendered them unconscious and raped them, then a common scheme or plan emerges that shows this Defendant did commit the crime he was accused of having committed. Far from being inadmissible "character" evidence, it is powerful, convincing, reliable and relevant evidence.

We have considered the Defendant's other issues and find them to be without merit. We agree the trial court properly admitted the challenged evidence and we affirm the Court of Appeals decision and affirm the Defendant's convictions.

DURHAM, C.J., UTTER, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and BRACHTENBACH, J. Pro Tem., concur.