# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67111-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN EDWARD BETTYS, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |

GROSSE, J. — In the consolidated cases of State v. Gresham and State v. Scherner, our state Supreme Court held that RCW 10.58.090, allowing admission of evidence of prior sex offenses in a sex offense prosecution, is unconstitutional.[1] Thus, the trial court's admission of the defendant's prior sex offenses under this statute was error. And when, as here, the trial court also properly excluded the prior offense under ER 404(b) and the untainted evidence of guilt was not overwhelming, admission of the prior offense amounts to reversible error. Accordingly, we reverse.

## FACTS

M.F. is the son of Andree King.[2] M.F. was placed in foster care when he was seven months old and returned to Andree when he was four years old. In the meantime, Andree married Daniel King, with whom she had two more children, W.K. and T.K. When M.F. was returned to Andree, the family lived briefly on 17th Street in Anacortes and then moved to the home of Andree's grandmother, Deanne Thomas, on Stevenson Road, sometime in 2009.

---

[1] 173 Wn.2d 405, 432, 269 P.3d 207 (2012).
[2] To avoid confusion, Andree King will be referred to by her first name.

Thomas' close friend, Sylvia Bettys,[3] lived about a mile away in a house on Padilla Heights Road. Her son, John Bettys, was King's uncle and lived in a trailer on the property with his wife Marissa and their child Harley. Also living on the property in a separate trailer was Bettys' nephew, Michael, also known as "Bacca."

Bettys was a registered sex offender, having pleaded guilty to two counts of first degree child rape in 1993. These charges involved Bettys' sexual abuse of King and Bacca when they were both children. According to Bacca, Bettys was eleven when he began sexually abusing him and continued to abuse him over several years, beginning when Bacca was between five and seven years old until he was twelve. According to Bacca, Bettys similarly abused King and the abuse began with touching over the clothes and progressed to mutual oral sex. In 1993, King, who was seven years old at the time, disclosed the abuse to a detective. The detective contacted Bettys, who was eighteen years old at the time, and Bettys confessed to engaging in oral sex with both Bacca and King.

Andree was aware of Bettys' prior sex offenses but her family frequently spent time at the Bettys' property. M.F. spent the night with Bettys and his wife in their trailer on five occasions. Andree also arranged to have Bettys drive M.F. to school. Thomas and Andree's mother, Laurie Ferrell, were uneasy with the family's involvement with the Bettys and cautioned Andree about allowing M.F. to be alone with Bettys.

In July 2009, M.F. was staying at Sylvia's house. But he was apparently being watched by Bettys and Marissa, as Sylvia had become too ill to care for the children. Bettys' sister, Kathy Tjeerdsma, who was a nurse, came to the house twice a day to

---

[3] To avoid confusion, Sylvia Bettys will be referred to by her first name.

care for Sylvia and also expressed concern to Ferrell about M.F. being left alone with Bettys.

On July 9, 2009, Ferrell brought her mother, Thomas, home from the hospital after surgery around 2:00 in the afternoon. Andree, King, and M.F. were at Thomas' house at the time. At some point, Bettys arrived at the house with Bacca, and M.F. went outside to greet them. Ferrell went to bring M.F. back inside the house and when she picked up M.F. to bring him inside, M.F. grabbed her crotch and started laughing. When Ferrell brought him in and told him that it was not okay for him to touch her privates, he went into a rage, yelling and throwing things. He then ran outside and Ferrell went out after him. Ferrell then began throwing a ball around with him and tried to get him to talk to her.

M.F. eventually told Ferrell that Bettys "poked" him in the penis. Ferrell asked if he wanted to talk to his mom or dad but he said he only wanted to talk to "Grandpa Kurt," who was Ferrell's partner. M.F. then told Kurt and she and Kurt went to Andree and King and told them what M.F. said. Andree and King yelled at M.F. and told him he was a liar and was going to go to jail if he lied. King questioned him about the details and M.F. said it happened at Grandma Sylvia's house. King and Andree then took M.F. directly to the police department to speak with a detective.

The case was referred to Detective Michael Hansen, who arranged for a child interview of M.F. at the Mount Vernon Child Advocacy Center on July 16, 2009. A child interview specialist interviewed M.F. and he disclosed that Bettys had touched him in his genital area two times and that Bettys told him not to tell anyone. M.F. said it happened in the living room at his Grandma Sylvia's house when she was in the

hospital.

Detective Hansen also interviewed Bettys and he denied the allegations. He described his relationship with M.F. as distant and denied having any physical contact with him. He claimed he was never alone with M.F. and that his family always made sure there was another adult around when M.F. was around him.

Bettys was also interviewed later that day by Glen Hutchings, assistant chief of the Swinomish Tribal Police Department. During this interview, Bettys claimed it was the first time he had heard of the allegations. Hutchings asked if the touching could have occurred in a playful, inadvertent, or accidental way, but Bettys denied that any touching occurred. Bettys admitted to one occasion when M.F. had spent the night and wet the bed. Bettys said he drew a bath for M.F. but gave him privacy in the bathroom while he bathed and dressed. Hutchings then asked if Bettys had ever touched M.F.'s penis over the clothing, had touched his groin area, or had ever touched M.F. for sexual purposes, and Bettys replied that he had not done any of those things. When Hutchings told Bettys he did not believe he was being candid, Bettys eventually admitted to an incident when M.F. was misbehaving while they were watching television with King when Bettys put his hands on M.F.'s upper thighs and held him down in a time out. He further admitted to wrestling and tickling him on his knees, upper thighs, and under his arms, and that M.F. hugged him once after a fishing trip. Bettys also admitted that he still had a drive and desire for children.

The State charged Bettys with two counts of first degree child molestation. M.F. was seven years old at the time of trial. He testified that he had been at Bettys' house and received rides to school from Bettys. M.F. said that Bettys touched him in his

4

privates and identified that area on a diagram of the body. He also identified two pictures he had drawn showing that Bettys had touched him. He testified that Bettys touched him with his hand and that the touching occurred inside Bettys' house.

The jury also heard evidence of Bettys' prior child rape convictions involving King and Bacca. The trial court admitted this evidence under RCW 10.58.090 but ruled that it was not admissible under ER 404(b). The jury found Bettys guilty of one count of first degree child molestation, but acquitted him on the second count. The trial court sentenced him as a persistent offender and imposed a life sentence. Bettys appeals.

## ANALYSIS

Bettys contends that the trial court erred by admitting evidence of his prior sex offense under RCW 10.58.090. In State v. Gresham, the Supreme Court determined that RCW 10.58.090 violates the separation of powers doctrine and is therefore unconstitutional.[4] Accordingly, the trial court erred by admitting Bettys' prior sex offenses under this statute.

Bettys further contends that the trial court properly excluded his prior sex offenses under ER 404(b), but even if it was admissible under ER 404(b), the lack of an instruction that it could not be considered as propensity evidence was error. We agree.

A trial court's ruling to exclude evidence is reviewed for an abuse of discretion.[5] For evidence of prior bad acts to be properly admitted under ER 404(b) as evidence of a common scheme or plan, the evidence must be "'(1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more

---

[4] 173 Wn.2d at 432.
[5] State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

probative than prejudicial.'"[6] Evidence of such a common scheme or plan "'must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and prior misconduct are the individual manifestations.'"[7] Here, the trial court ruled the evidence should be excluded under ER 404(b), concluding that "the only real purpose would be to show that -- acted in conformity therewith." While Bettys' prior convictions arguably could be considered part of a common plan to molest young boys, we cannot say that the trial court's ruling to exclude them was an abuse of discretion, given the potential for extreme prejudice in a sex case when the only other evidence is child hearsay.[8]

But even if the prior offenses were admissible under ER 404(b), the jury's consideration of that evidence was error absent a proper limiting instruction. If the prior offenses were admitted under ER 404(b), Bettys was entitled to a limiting instruction that told the jury for what purpose it may properly consider the prior misconduct evidence and that the evidence may not be used as a basis to conclude that he has a particular character and has acted in conformity with that character.[9] No such instruction was given here to limit the jury's consideration of that evidence. Rather, the instruction that was given relating to its admission under RCW 10.58.090 simply allowed the jury to consider his prior sex offense.

---

[6] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995)).

[7] DeVincentis, 150 Wn.3d at 19 (quoting Lough, 125 Wn.2d at 860).

[8] See State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982)(recognizing that "an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest").

[9] Gresham, 173 Wn.2d at 423-24; Foxhoven, 161 Wn.2d at 175.

Thus, we turn to the harmless error analysis, which requires us to determine whether "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[10] In Gresham, the court held that the admission of a prior sex offense was not harmless, concluding there was a reasonable probability that absent the "highly prejudicial evidence" of Gresham's prior sex offense, the outcome of trial would have been different.[11] Without the erroneously admitted evidence of a prior sex offense, the only remaining evidence in that case was the child victim's testimony about the abuse and witnesses' corroboration of the defendant's opportunity to commit the alleged acts.

Likewise here, we cannot say that the admission of Bettys' prior child rape convictions, in conjunction with an instruction allowing the jury to consider the evidence for propensity purposes, was harmless. As in Gresham, absent evidence of the highly prejudicial evidence of the prior convictions, there is a reasonable probability that the outcome of the trial would have been different. The evidence of guilt presented at trial hinged on witness credibility. Bettys denied the allegations and the only direct evidence of his guilt was the testimony of a young child victim and his statements to other adults. While such evidence was sufficient to support Bettys' conviction, we cannot say that this highly prejudicial evidence of his prior sex offenses did not materially affect the jury's verdict. Indeed, in closing argument, the State emphasized the significance of Bettys' prior convictions, arguing that he "has a temptation for younger boys," that "[t]his has happened before in the past" when he abused his two nephews, and that this is

---

[10] Gresham, 173 Wn.2d at 433 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

[11] Gresham, 173 Wn.2d at 433.

something he clearly has "an ongoing problem with."[12] Because the trial court's admission of evidence of the prior child rape convictions under RCW 10.58.090 was not harmless, we reverse. Accordingly, we need not reach the remaining issues raised in Bettys' Statement of Additional Grounds.[13]

WE CONCUR:

_____

_____                    Cox, J.

---

[12]The strength of the State's evidence is further undermined by the fact that the jury acquitted on one of the two charged counts even when considering the erroneously admitted evidence of the prior convictions.

[13] Because we reverse Betty's conviction, his pending motions in this court seeking further relief are moot.