## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54165-3-II |
| Respondent, | |
| v. | |
| ANTOINE JOSEPH PERRY, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — A jury convicted Antoine Perry of rape in the second degree, assault in the second degree, and unlawful imprisonment. On appeal, Perry argues the trial court improperly admitted evidence of his prior misconduct under ER 404(b) and testimony from a sexual assault nurse examiner under ER 803(a)(4). We affirm his convictions.

### FACTS

Perry used Snapchat, a social media application, to meet and groom 15-year-old TG. They commented on each other's stories and exchanged responses to photographs. After TG posted that she could not make food because she had "burned [her] kitchen down," Perry offered to bring her food. 4 Report of Proceedings (RP) at 392. Initially, TG refused, but Perry continued to text her with the offer and eventually she agreed. TG told Perry through Snapchat and in person that she was 16 years old, even though she was 15. When bringing TG food, Perry drove a car he did not own and parked it in front of TG's house. TG got into the front seat.

Initially, Perry tried touching and kissing TG, and she told him to stop. Perry reached under his seat and told TG to get into the backseat. Fearing Perry had a gun, TG complied. In the

backseat, Perry forcibly raped TG. When TG attempted to resist him, Perry strangled her. Perry took TG's phone and hid it after she tried using it to connect to her home's wireless Internet.

TG continually told Perry he was raping her and she eventually started crying. Perry ended the rape due to TG's crying, claiming she was "killing the mood." 4 RP at 428. When TG attempted to get her phone back from Perry, he coerced her into getting back into the car. He attempted to drive off, but TG kept her door open and accused him of kidnapping her. He stopped, and TG exited the car and returned home.

After the attack, TG was initially afraid to tell her mother what had happened because she had snuck out of the house, so she called a friend. At her friend's urging, she called the police and told her mother. At the hospital, TG was interviewed by a sexual assault nurse examiner (SANE).

The State charged Perry with rape in the second degree, assault in the second degree, and unlawful imprisonment.

Before trial, the State sought to admit evidence, under ER 404(b), that Perry had committed a similar rape against another teenage victim close in time to the rape of TG. Perry raped CB three weeks after raping TG. CB met Perry through Snapchat, and they met in person after Perry offered to bring CB food. Perry parked in front of CB's home, and she got into his car to eat. Perry strangled CB after she resisted his sexual advances. Perry also took CB's phone during the attack. The State sought to admit evidence of this misconduct to show a common scheme or plan, lack of consent, intent as to the assault, and knowing restraint as to unlawful imprisonment.

The State argued the following similarities between the rape of CB and TG constituted a common scheme or plan: the two incidents occurred a few weeks apart; in both cases Perry used Snapchat to meet and communicate with CB and TG; both victims were close in age, one was 15 and one was 16; he lured both CB and TG into his car with offers of food; when both victims

resisted, Perry strangled them; and Perry separated both victims from their phones during the attacks.

The trial court made findings of fact and conclusions of law and determined that the attack against CB was admissible as a common scheme or plan under ER 404(b). The court made the following findings of fact:

> a. The use of "Snapchat" to make contact with the girls. It allows the perpetrator to hide his identity from the women he is grooming while trying to gain the confidence of both. In both cases, the defendant used a made-up name.
> b. Both of the girls are in the age-range of 15 or 16. That range is susceptible to online manipulation and curiosity about the opposite sex.
> c. The defendant uses a car not owned by him in both instances.
> d. The defendant parks in front of both the homes and never enters, requiring the girls to come to the defendant's car to isolate them.
> e. The defendant uses food as an excuse to meet the girls or gain their friendship or trust.
> f. The fact that sexual acts occur in the car after the defendant pretends to be their friend or using the ruse of going on a[n] "innocent drive."
> g. The defendant's strangling of both girls to subdue their resistance. Both girls stated that if they didn't stop resisting, they felt as if they would be killed.
> h. The need for both girls to flee from the vehicle. The defendant's shift in demeanor after the act was completed was near identical in both cases.
> i. The defendant's attempt to prevent communication of both girls by not allowing them access to their cell phones.
> j. The closeness in time that these incidents occurred make it less likely to be a coincidence or random similarity.

Clerk's Papers at 179-80.

During trial, Perry objected to the testimony of the SANE nurse, arguing that ER 803(a)(4) was inapplicable because TG's purpose in speaking with the nurse was not for medical treatment. The trial court determined that although TG's statements to the nurse were in part to collect evidence, such statements were also necessary for medical treatment.

The jury convicted Perry of all charged counts. Perry appeals his convictions.

ANALYSIS

I.      STANDARD OF REVIEW

We review a trial court's admission of evidence for an abuse of discretion. *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

II.     ADMISSION OF PRIOR MISCONDUCT

Perry argues that the trial court improperly found factual similarities between CB's and TG's rapes, and that the remaining similarities are too minor or innocuous to constitute a common scheme or plan.[1] We disagree.

A.      Legal Principles

To admit evidence of a defendant's prior misconduct,

> "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

One proper purpose for admitting evidence of prior misconduct is to show the existence of a common scheme or plan. *Gresham*, 173 Wn.2d at 421. Evidence of a common scheme or plan may be properly admitted under ER 404(b) because such evidence is not used to prove the character of the defendant. *Id.* at 422.

---

[1] The State argues, in part, that because Perry failed to object to the findings of fact, he failed to preserve his claim. However, Perry objected to the admittance of the prior conduct evidence by moving the court to exclude CB's testimony, which is sufficient to preserve the issue.

A plan exists when individual crimes constitute parts of a larger plan, and a common scheme occurs when a defendant devises a plan and uses it to commit similar crimes. *Id*. This case concerns a common scheme. To qualify as a common scheme, prior crimes must have common features that can be explained by a general plan, and each crime is a manifestation of that plan. *Id*.

A trial court may determine there are commonalities between crimes that constitute a scheme even if there was no unique method of committing the crimes. *Id*. In *Gresham,* the court admitted evidence of prior sex offenses after determining such crimes constituted a common scheme. *Id*. at 422-23. The court determined the crimes were similar because the defendant took trips with each victim, approached them at night when the other adults were asleep, and fondled their genitals. *Id*. at 422. The court held that, while the crimes were not identical, the similarities could be explained as "'individual manifestations'" of the same plan. *Id*. at 423 (quoting *State v. Lough*, 125 Wn.2d 847, 860, 889 P.2d 487 (1995)).

B.     Analysis

Perry challenges the trial court's finding that the evidence was admissible under ER 404(b) as a common scheme or plan, arguing that the court improperly found that Perry hid his identity on Snapchat, that Perry separated CB and TG from their phones during the attacks, and finally that Perry took both CB and TG on joy rides.

However, even if we were to exclude the challenged findings, the remaining findings are sufficient for the trial court to have determined that CB's and TG's rapes constitute a common scheme or plan. *Gresham* is instructive here. In that case, the court determined there was a common scheme or plan based on three similarities between crimes. Here, the court relied on numerous factual similarities: Perry used Snapchat to make contact with the girls; both girls were

5

similar in age; Perry used a car not owned by him; Perry parked in front of both the homes and never entered, requiring the girls to come to his car, thus isolating them; Perry used food as an excuse to meet the girls or gain their friendship or trust; the sexual acts occurred in the car; Perry strangled both girls to subdue their resistance; both girls needed to flee from the vehicle; and the two incidents were close in time.

This record shows significant similarities between CB's and TG's rapes. Based on this record, the trial court's conclusion that the similarities between CB's and TG's rapes constitute a common scheme or plan is not manifestly unreasonable or based on untenable grounds. Accordingly, we hold that the trial court did not abuse its discretion in admitting the evidence.

III.    ADMISSION OF SANE NURSE TESTIMONY

Perry argues that the trial court improperly admitted the SANE nurse's testimony under ER 803(a)(4) because the only purpose of TG's exam was to collect evidence. We disagree.

A.      Legal Principles

A court may admit a declarant's hearsay statements made to medical professionals under ER 803(a)(4). *State v. Burke*, 196 Wn.2d 712, 740, 478 P.3d 1096 (2021). On review, we consider the declarant's subjective purpose in making statements to a medical professional. *Id*. "The medical diagnosis exception applies only to statements that are "reasonably pertinent to diagnosis or treatment."" *State v. Williams*, 137 Wn. App. 736, 746, 154 P.3d 322 (2007) (quoting ER 803(a)(4)). A party demonstrates that a statement is reasonably pertinent to medical diagnosis or treatment when the declarant's motive in making the statement is to promote treatment, and the medical professional reasonably relied on the statement for purposes of treatment. *Burke*, 196 Wn.2d at 740.

Unless a declarant's statements show they spoke with a medical professional purely for a forensic purpose, a court may infer statements were made in part to promote treatment. *Williams*, 137 Wn. App. at 746. In *Williams*, the victim testified that she initially did not believe she needed medical treatment and understood medical professionals would be collecting evidence. *Id*. at 746-47. Notably, she did not state that her only purpose for going to the hospital was forensic. *Id*. at 747.

On appeal, the court determined that although the victim's initial purpose in speaking with the nurse was to collect evidence, this was not her only purpose. *Id*. at 746-47. When asked whether she went to the hospital for medical treatment, she responded "Not right at first." *Id*. at 747. The court also pointed out that certain statements that may appear to be about evidence, like identifying an attacker, also help with medical treatment because part of reasonable treatment is to prevent future injury from the same perpetrator. *Id*. at 746. Ultimately, the court ruled that the trial court properly admitted testimony under ER 803(a)(4) because the victim's statements did not show her purpose in going to the hospital was purely forensic. *Id*.

B.     Analysis

Here, TG's purpose in communicating with the SANE nurse was not purely forensic. The only testimony provided by TG about her hospital visit shows she did not realize medical staff would be collecting evidence. She stated that she was surprised when the collection of evidence began. These statements imply she believed her visit was solely to seek medical treatment, while the forensic purpose arose later. These facts are stronger than those in *Williams*. Like the trial court in *Williams*, the trial court here reasonably concluded that TG's purpose was to seek medical treatment. Therefore, the court's reasoning was not manifestly unreasonable or based on untenable

grounds. We hold that the trial court did not abuse its discretion when it determined the SANE nurse's testimony was admissible under ER 803(a)(4).

IV.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

A defendant seeking review of a criminal case "may file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a).

Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider the appellant's SAG for review "if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).

Perry's SAG consists of a cover sheet indicating two additional grounds for appeal, attachments of a motion to arrest judgment, correspondence with his trial attorney, and finally pages marked as containing his SAG. Perry argues that the State committed prosecutorial misconduct and ineffective assistance of counsel. However, the issues Perry raises are either not errors, are too vague, or are not supported by the record. We refuse to reach them. *See* RAP 10.10(c).

CONCLUSION

We affirm Perry's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, P.J.

_____
Cruser, J.