# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. ANDREW SCOTT GRIFFIN, Appellant. | DIVISION ONE No. 84354-1-I UNPUBLISHED OPINION |

DWYER, J. — Andrew Griffin appeals from the judgment entered on a jury's verdict convicting him of one count of child molestation in the third degree and one count of assault in the fourth degree. On appeal, Griffin contends that the trial court erred by admitting evidence that he had previously sexually abused A.F.,[1] the alleged victim of the charged offenses herein. The State, in seeking the admission of that evidence, argued the disavowed legal theory of "lustful disposition." Additionally, in alternatively seeking to have the evidence admitted as evidence of a common scheme or plan, the State failed to provide the trial court with the proof, analysis, and argument mandated by our decisional authority. By admitting this evidence based on the State's unsupported theory and by not instructing the jury as to the limited purpose for which they were permitted to consider this evidence, the trial court erred. Because the admission

---

[1]We use the redacted names for both the alleged victim, A.F., and her mother, Lisa F.

of this evidence prejudiced Griffin, this error was not harmless. Accordingly, we reverse and remand for a new trial.

I

Griffin moved in with Lisa F. and A.F. when A.F. was 9 or 10 years old. When A.F. was 12 years old, after moving across the United States, they arrived in Concrete, Washington. After A.F.'s 18th birthday, Griffin moved out of the house. A few months later, A.F. disclosed to a friend that Griffin had repeatedly sexually abused her since she was 10 or 11 years old.

In August 2020, the State, by third amended information, charged Griffin with two counts of rape of a child in the second degree, two counts of rape with forcible compulsion with a victim under 15 years of age, one count of child molestation in the third degree, and one count of assault in the fourth degree, with sexual motivation. Griffin pleaded not guilty to all charges.

In April 2021, the State filed a motion in limine seeking to introduce evidence that Griffin had previously sexually abused A.F. on occasions prior to those for which Griffin had been charged. The State asserted that this evidence was admissible to demonstrate Griffin's "lustful disposition" toward A.F. The State emphasized that "lustful disposition" "has been routinely upheld and relied upon by the Supreme Court."

The State further asserted that the evidence was admissible to demonstrate Griffin's common scheme or plan to sexually abuse A.F. The State, in support of its common scheme or plan argument, provided an offer of proof as follows:

In this case, the victim and defendant lived in Wisconsin when the sexual abuse began around 2010. In 2011, the victim, her mother, and the defendant moved to Idaho for a short period of time, then to Seattle for a period of time. According to the victim, the defendant sexually abused her in a similar manner consistently at all of these locations.

The State argued that the evidence of a common scheme or plan was relevant to an element of the crimes charged because

> [t]he evidence of common scheme or plan shows that the incidents charged in this case are not isolated incidents, but a pattern of behavior that the defendant engaged in over time. This directly relates to the victim's credibility. The duration and extent of sexual abuse also bears on the reason for the victim's delayed disclosure. The extent of abuse over time also bears on the victim's fear of the defendant and the control he held over the victim.
> The State is also required to show that the sexual contact was for the purposes of the defendant's "sexual desires." The pattern of abuse supports that the incidents charged in this case were part of a pattern of a sexual relationship with the victim and not some isolated incidents.

The State additionally argued that the evidence of a common scheme or plan was more probative than prejudicial because of the general probative value of prior similar acts of sexual abuse and the general need for proof in child sexual abuse cases.

Six days later, the trial court heard argument and considered the State's motion at a pretrial hearing:

> [PROSECUTOR:] Thank you, Your Honor. I don't, in all honesty, have a whole lot to add to what's in the brief. I think the case law is clear that this is something that is allowable. I don't intend on having the victim testify about many, if any, actual specific other instances. There may be some facts of, you know, like the first time it happened that may come out or something to that effect.
> Generally what I propose to question her about is generally that this is something that occurred regularly, about when it started,

3

the location that it happened in. Obviously the State can only file what's within its jurisdiction. I did not file every single incident that occurred here; we generally never do. I filed the ones that I believe the victim has the best memory of for certain reasons. These are the ones that stuck out. These are the ones the State is [focusing] on.

I think that the fact that this is a general pattern of behavior is extremely relevant to the disclosure issue. I think that gives context to what is going on. It's different for the jury to hear, hey, there's these four isolated incidents with nothing else being put forward to show any context to this. I think that's different than this is a pattern of behavior that went on over an extended period of time. It affected her behavior or her fear levels.

All of those things I believe are relevant, and I think the jury has a right to hear those. So I don't expect to be questioning her about specific times. I may ask her something like, well, do you remember the first time something happened? And she may give some minor details about it, but I'm not going to get into it, I guess.

So unless the Court has any questions, I don't have much to add to what is already in the brief already.

THE COURT: Right. So I'm seeing that the first date of violation alleged here is January 1st of 2012, and I understand, you know, it's a range. So how far back are you planning on going?

[PROSECUTOR:] The beginning. So they originally lived in Wisconsin when she was about 10, according to her; that's when the abuse began. It was, I think if I remember, kind of sporadic at first, and it picked up over time. They then moved to, I want to say, his grandparent's house or another family member's house. Then they moved to Idaho for a little bit. Then they moved to Seattle and lived with Mr. Griffin's mother, then eventually wound up in our county in the beginning of 2012. So the abuse, my understanding, and I expect the testimony would be, is that it began in Wisconsin, shortly after he came into their lives, and continued throughout all of these different locations. So I'm obviously barred from charging anything that happened outside of our county, but I still believe that it's relevant to the entire case.

THE COURT: So you are talking about a year or two before these charges arose?

[PROSECUTOR:] About, yeah, I think that's about right. If I remember correctly, she was about 10 when this began. And she was 12 at the time of the first charge; that was shortly after they got to our county.

Defense counsel objected, arguing that the evidence should be excluded because (1) the State's offer of proof did not establish a common scheme or

4

plan, (2) the common scheme or plan exception does not apply to misconduct involving the same victim as the one involved in the charged offenses at issue, and (3) the evidence's prejudicial effect outweighed its probative value.

The trial court did not evaluate defense counsel's objections or seek a response from the State. The court stated:

> All right. Well, first there needs to be a showing by the preponderance of the evidence that this misconduct occurred. And the State made an offer of proof here, and I'm not sure what the State plans on doing, if that was just an offer of proof that was being planned to be made or if there was –

The State interjected, offering,

> I can certainly make a more detailed one, but in all -- like I said, in all reality I'm not planning on getting into specific instances. I frankly think that that probably does go too far. Really the offer of proof is really what I just relayed to the Court. I think there's some of it here in the briefing as well.

With the State's offer of proof limited to its briefing and its statements at the pretrial hearing, the trial court issued its ruling:

> [F]irst the State needs to show the prior acts occurred by a preponderance of the evidence. And that can be done through an offer of proof. And I understand that everybody here has already interviewed everybody with this case and is probably pretty familiar with what the testimony is going to be. And if that's what the testimony is going to be, then I am making the finding that a preponderance of the evidence shows that there had been misconduct that took place prior to the move to Washington. And the purpose here is introducing the evidence of a common scheme or plan. But also it seems here that if she's going to be asked when the first time was that Mr. Griffin made some sort of sexual contact with her, that I don't see how she would even be able to answer that question if this testimony wasn't allowed, and that is the common plan or scheme and just really the completeness of this testimony. And then is this relevant to prove an element of the

crime charged. The State submitted that this was to prove essentially the sexual gratification[2] element.

[PROSECUTOR:] It's hard to pinpoint one particular thing that is part of it, and also it pertains to the disclosure. It could also give context in part. There's also a couple things this pertains to. So, I guess, it's an overall argument in how it's relevant.

. . . .

THE COURT: Right. Which would be another reason why this would actually be relevant because if she's testifying he started touching me when I was however old then, you know, there might be other testimony indicating, okay, well she was this old when they moved to Skagit County. I think that when you are talking about somebody testifying when they were a child, and they talk about the first time they remember how old that they think they were when something happened, it is going to be very hard for her to parse it out to exactly what it was, what incident took place in Skagit County. It would almost be like telling her to lie or coaching her testimony in a way.

I just think it would be really challenging for us to be able to direct her to be answering only with respect to what was happening in Skagit County. But I think that it is relevant to the element because she needs to testify as to the dates of the incidents, and that would be -- I think this testimony would be relevant to that. And also just as I said, the completeness of the testimony it would be difficult for us to have her dissect that. And it is relevant to the sexual gratification element, which I know is a factor as well.

So then I am finding that certainly there is a prejudicial effect of anything coming in that might show that Mr. Griffin is guilty of this sort of an offense, but just in doing the balancing between the probative value of this type of testimony and the prejudicial effect that you find the probative value here outweighs the prejudicial effect for all of the reasons that I just stated.

So I am granting the motion with the understanding that the State isn't going to go into depth of anything that happened outside of Skagit County, just laying the groundwork for further testimony.

Trial thereafter commenced. Following opening statements, defense counsel moved for a mistrial, stating that he was not capable of audibly hearing the proceedings. Griffin did not object to the motion, and a mistrial was declared.

---

[2] The statutory element at issue was the sexual motivation special allegation set forth in the third and fourth amended information. See RCW 9.94A.835.

Ten months later, in March 2022, our Supreme Court announced its opinion in State v. Crossguns, 199 Wn.2d 282, 290, 505 P.3d 529 (2022), holding that "lustful disposition" may no longer be cited as an exception to the prohibition against admitting evidence of prior misconduct.[3]

Three months after our Supreme Court's decision in Crossguns, the State charged Griffin, by fourth amended information, with two counts of rape of a child in the second degree, one count of child molestation in the third degree, and one count of assault in the fourth degree, with sexual motivation. Griffin pleaded not guilty to all charges.

In June 2022, the State submitted amended motions in limine to the trial court. Notwithstanding our Supreme Court's holding in Crossguns, the State sought admission of the prior sexual abuse evidence on the same bases as before—that such evidence was admissible to demonstrate "lustful disposition" and a common scheme or plan by Griffin to sexually abuse A.F. The State again asserted in its motion that "lustful disposition" "has been routinely upheld and relied upon by the Supreme Court."[4]

Four days later, the trial court heard argument and considered the State's amended motion at a pretrial hearing, stating

---

[3] The pertinent evidentiary rule reads as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
ER 404(b).
[4] The State's amended motion included a paragraph requesting that the trial court adopt its earlier ruling admitting the prior sexual abuse evidence and restricting the scope of the State's questioning.

7

my recollection of how this was argued last year was that the [S]tate didn't intend to get into all of the details of prior incidents, but that there are alleged incidents that started I think in Wisconsin that occurred in another state and then moved to the Seattle area and then here.

And it was more of a general overview of when things began and continued and not getting into specific incidents, so that's my recollection, was that what the [S]tate was trying to offer here was more of a general overview instead of proving specific instances that aren't charged here.

. . . .[5]

. . . I do recognize that there is prejudice involved with this. I also recognize that it would be a little -- almost disingenuous to require somebody to testify as though this was the first time that this happened, if she believes that it's happened -- if it had been happening for years before that.

And some of it is also part of the completeness of her testifying. I would imagine it also goes into some of the delayed disclosure that the [S]tate is trying to develop.

I think that the ruling last year was primarily that this was admissible for purposes of proving a common scheme or plan. I think that was the basis.

[PROSECUTOR:] That's correct.

Neither the State nor the trial court mentioned our Supreme Court's decision in Crossguns. The trial court granted the State's motion.

During the second trial, the State elicited testimony from A.F. that Griffin had repeatedly sexually abused her prior to the sexual abuse charged herein. The jurors were not provided with an instruction limiting the purposes for which they were permitted to consider this evidence.

The jury convicted Griffin of child molestation in the third degree and assault in the fourth degree, but did not reach a verdict as to the two counts of rape of a child in the second degree and the sexual motivation special allegation.

Griffin appeals.

---

[5] At the June 2022 hearing, defense counsel again objected to the admission of this evidence, emphasizing that the prejudicial effect of admitting this evidence "is incredible and extreme."

II

Griffin asserts that the trial court abused its discretion by admitting evidence of his prior sexual abuse of A.F.  We agree.

Notwithstanding our Supreme Court's decision in Crossguns, the State urged the trial court to admit this evidence to establish Griffin's "lustful disposition" toward A.F.  The State additionally asserted that the evidence was admissible to demonstrate Griffin's common scheme or plan to molest A.F.  In so doing, however, the State failed to provide the trial court with the proof, analysis, and argument mandated by our decisional authority.  Consequently, the sole connection between the prior sexual abuse and the charged sexual abuse was that this evidence demonstrated either Griffin's propensity to sexually abuse A.F. or his "lustful disposition" toward A.F.

Accordingly, by admitting the proffered evidence, the trial court erred. Compounding this error, no limiting instruction was provided by the trial court to the jury as to the purpose for which the jurors were permitted to consider this evidence. Thus, the jury was left free to consider it as evidence of Griffin's propensity to molest A.F.

The jury herein was presented with evidence that Griffin had sexually abused A.F., the victim of the charged sexual abuse offenses, when she was between 10 and 12 years old.  The jury did not have any instruction as to the purpose for which they were permitted to consider this evidence.  In this, the trial court erred.  Because of the heightened probability of prejudice in cases involving child sexual abuse offenses, the absence of a limiting instruction, and the prior

9

sexual abuse involving the same individual as the alleged victim of the charged offenses, this error significantly prejudiced Griffin.

A

We review a trial court's interpretation of an evidentiary rule de novo. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (citing State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1988)). "Once the rule is correctly interpreted," we review the trial court's decision to admit or exclude evidence for an abuse of discretion. DeVincentis, 150 Wn.2d at 17 (citing State v. Lough, 125 Wn.2d 847, 856, 889 P.2d 487 (1995)). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons." State v. Sullivan, 18 Wn. App. 2d 225, 234, 491 P.3d 176 (2021) (citing State v. Taylor, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019)).

"The purpose of the rules of evidence is to secure fairness and to ensure that truth is justly determined. To that end, ER 404(b) forbids evidence of prior acts that tend to prove a defendant's propensity to commit a crime, but allows its admission for other limited purposes." State v. Wade, 98 Wn. App. 328, 333, 989 P.2d 576 (1999). The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).[6]

---

[6] We have held that "other misconduct," rather than "prior misconduct," more precisely follows the text of ER 404(b). Sullivan, 18 Wn. App. 2d at 237 n.3. Here, because the alleged

10

"A trial court must always begin with the presumption that evidence of prior bad acts is inadmissible." DeVincentis, 150 Wn.2d at 17. This is so, because

> [t]he question to be answered in applying ER 404(b) is not whether a defendant's prior bad acts are logically relevant—they are. Evidence that a criminal defendant is a "criminal type" is relevant. But ER 404(b) reflects the long-standing policy of Anglo-American law to exclude most character evidence because "it is said to weigh too much with the jury and to so overpersuade them. . . . The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." Michelson v. United States, 335 U.S. 469, 476, 69 S. Ct. 213, 93 L. Ed. 168 (1948).

State v. Slocum, 183 Wn. App. 438, 456, 333 P.3d 541 (2014) (alteration in original). Therefore, "[t]he State must meet a substantial burden when attempting to bring in evidence of prior bad acts under one of the exceptions" to the general rule prohibiting the admission of such evidence. DeVincentis, 150 Wn.2d at 17. "In doubtful cases, the evidence should be excluded." State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986)).

When a party seeks to introduce evidence of other misconduct under ER 404(b), the trial court must conduct a four-step inquiry on the record and provide a limiting instruction to the jury.

> [T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

---

misconduct occurred prior to the charged criminal conduct at issue, we use "prior misconduct" to describe the misconduct at issue in our ER 404(b) analysis.

<u>Vy Thang</u>, 145 Wn.2d at 642 (citing <u>Lough</u>, 125 Wn.2d at 853). The trial court's "analysis must be conducted on the record, and *if the evidence is admitted, a limiting instruction is required.*" <u>State v. Arredondo</u>, 188 Wn.2d 244, 257, 394 P.3d 348 (2017) (emphasis added) (citing <u>State v. Foxhoven</u>, 161 Wn.2d 168, 175, 163 P.3d 786 (2007)); <u>see also</u> <u>Sullivan</u>, 18 Wn. App. 2d at 235 (quoting <u>Arredondo</u>, 188 Wn.2d at 257).

B

Despite the State's urging that it do so, the trial court did not explicitly admit evidence of Griffin's prior sexual abuse of A.F. to demonstrate "lustful disposition." Of course, any such ruling would have been erroneous. <u>See</u> <u>Crossguns</u>, 199 Wn.2d 282; <u>accord</u> <u>State v. Bartch</u>, No. 83386-3 (Wash. Ct. App. Oct. 30, 2023), http://www.courts.wa.gov/opinions/pdf/833863.pdf. Nevertheless, the State's argument and analysis implicitly sought to admit this evidence to demonstrate either Griffin's propensity to sexually abuse A.F. or Griffin's "lustful disposition" toward A.F. Thus, the trial court's admission of the evidence— predicated on the State's argument—presumes that Griffin either acted out of a propensity to sexually abuse A.F. or possessed a "lustful disposition" toward A.F.

Accordingly, we take this opportunity to reiterate our Supreme Court's holding in <u>Crossguns</u> that

> [i]n addition to being incorrect, the "lustful disposition" label is also harmful. To the extent that it appears to allow propensity evidence, it is clearly harmful because "ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a person's character and showing that the person acted in conformity with that character."

199 Wn.2d at 292-93 (quoting State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012)). While disavowing the lustful disposition exception, the court noted that "even where we have purported to rely on the 'lustful disposition' doctrine, the evidence in question has generally been admissible for some other, proper purpose, such as intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake." Crossguns, 199 Wn.2d at 294.[7] In fact, in Crossguns, the court concluded that the State had presented the trial court with additional theories of ER 404(b) admissibility other than "lustful disposition," and concluded that the trial court had properly analyzed the proposed prior misconduct evidence. 199 Wn.2d at 294-96. Accordingly, our Supreme Court held that the challenged evidence was properly admitted. Crossguns, 199 Wn.2d at 294-96.

Prior to Griffin's first trial, the State sought to introduce evidence that Griffin had previously sexually abused A.F. to show that he had a "lustful disposition" toward A.F., thus suggesting that he had committed the offenses against A.F. charged herein. This was before our Supreme Court's pronouncement in Crossguns that "lustful disposition" is no longer a proper basis on which a party may seek to admit evidence of prior misconduct. 199 Wn.2d at 290. Subsequently, following the mistrial, the announcement of Crossguns, and before the second trial, the State again sought admission of the same evidence and again relied on "lustful disposition." This was after Crossguns was

_____

[7] The court continued, "[i]n addition, due to the nature of the crimes of rape and of child sexual abuse, the evidence of other uncharged sexual misconduct may be admissible as part of the crime itself in appropriate cases." Crossguns, 199 Wn.2d at 294.

announced, but the State provided the same argument as to why this evidence should be admitted to demonstrate "lustful disposition." In ruling that the proffered evidence was admissible, the trial court did not explicitly mention "lustful disposition."

Here, any ruling that relied on "lustful disposition" to admit the proffered evidence would clearly have been erroneous. Indeed, this evidence offered for that purpose would suggest that, because Griffin had sexually abused A.F. in the past, he must have a "lustful disposition" toward her, and because of this disposition, he more likely committed the charged sexual abuse against A.F. Crossguns holds that this would be improper. Indeed, our Supreme Court's mandate is clear: "lustful disposition" is not a permissible exception to ER 404(b). Crossguns, 199 Wn.2d at 290. It is incorrect and evokes propensity. Crossguns, 199 Wn.2d at 290. Although not mentioning Crossguns, and despite the State's urging prior to the second trial, the trial court did not explicitly admit the evidence of Griffin's prior abuse of A.F. for the purpose of lustful disposition.

However, as discussed herein and in light of the State's deficient arguments to the trial court, none of the State's proposed arguments on which the trial court sought to rely were availing. Therefore, "lustful disposition" and propensity continued to suffuse the proceedings.

C

Griffin asserts that the trial court erred by admitting evidence of his alleged prior sexual abuse of A.F. to demonstrate a common scheme or plan. We agree.

14

The State urged the trial court to admit the proffered evidence to demonstrate that Griffin had a common scheme or plan to sexually abuse A.F. Despite the absence of both a substantive offer of proof and an appropriate analysis of a common scheme or plan by the State, the trial court not only admitted this evidence but also failed to provide any instruction to the jury as to the limited purpose for which this evidence could be considered. In so doing, the trial court erred.

As set forth above, once a party seeks to introduce evidence of other misconduct under ER 404(b), the trial court must conduct a four-step inquiry on the record and provide a limiting instruction to the jury.

> [T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

Vy Thang, 145 Wn.2d at 642 (citing Lough, 125 Wn.2d at 853); Arredondo, 188 Wn.2d at 257 ("[A] limiting instruction is required." (citing Foxhoven, 161 Wn.2d at 175)).

The trial court did not comply with these mandates.

1

As to the first step in the analysis, the State indicated that its offer of proof was based on its briefing and its statements at the pretrial hearing.

"[T]he party offering the evidence of prior misconduct has the burden of proving, by a preponderance of the evidence, that the misconduct actually occurred." Lough, 125 Wn.2d at 864 (citing State v. Benn, 120 Wn.2d 631, 653,

845 P.2d 289 (1993); State v. Bythrow, 114 Wn.2d 713, 719, 790 P.2d 154 (1990)). "On appeal, a finding that the misconduct actually occurred will be affirmed if supported by substantial evidence in the record." Lough, 125 Wn.2d at 864 (citing Benn, 120 Wn.2d at 653).

The State's briefing prior to each pretrial hearing set forth the following:

> In this case, the victim and defendant lived in Wisconsin when the sexual abuse began around 2010. In 2011, the victim, her mother, and the defendant moved to Idaho for a short period of time, then to Seattle for a period of time. According to the victim, the defendant sexually abused her in a similar manner consistently at all of these locations.[8]

At the April 2021 pretrial hearing, the State emphasized that it planned to elicit testimony from A.F. "that this is something that occurred regularly, about when it started, the location that it happened in," that the State did not expect to be questioning her about specific times, and that the "abuse" took place between when A.F. was 10 and 12 years of age. The State further emphasized that, as to its offer of proof, it was "not planning on getting into specific instances [because] . . . that probably does go too far."[9]

The State did not meet its burden of proof. The State's proffer was only that Griffin's "sexual abuse" began around 2010 and that Griffin had "sexually abused [A.F.] in a similar manner consistently" between 2010 and 2012. This

---

[8] The State's amended motion in limine in June 2022 reiterated this offer of proof.

[9] During the April 2021 pretrial hearing, defense counsel appeared to refer to a statement in an affidavit from Skagit County Sheriff's Office Detective Theresa Luvera. However, neither of the State's offers of proof in its briefing nor at the hearings provided that the State was relying on the statements set forth in Detective Luvera's affidavit as part of its proffer. Nor does the record set forth findings or analysis by the trial court indicating that this affidavit formed part of its evidentiary ruling here. Indeed, at the hearing, the State appeared to explicitly disclaim any reliance on more specific instances of sexual abuse. Absent such findings, we decline to speculate as to what other evidence the trial court might have relied on in issuing its evidentiary ruling. We are not fact finders.

proffer did not set forth the evidentiary specificity required to determine what misconduct actually occurred. Therefore, substantial evidence does not support the court's finding that specific acts actually occurred.

Nevertheless, the trial court relied on the State's offer of proof in determining that, by a preponderance of the evidence, the prior sexual abuse had occurred. But this vague reference to a category of acts is insufficient. Thus, the trial court abused its discretion in conducting the first step of the ER 404(b) inquiry.

2

For the second step of the ER 404(b) inquiry, the State asserted that it was offering the evidence of Griffin's prior sexual abuse of A.F. to demonstrate a common scheme or plan.

Both the language of ER 404(b) and our case law recognize common scheme or plan as a permissible exception to this evidentiary rule. See, e.g., DeVincentis, 150 Wn.2d at 17-18; Gresham, 173 Wn.2d at 421-22. One situation in which a common scheme or plan arises is when "'an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" Gresham, 173 Wn.2d at 422 (quoting Lough, 125 Wn.2d at 854-55).[10]

Here, the State asserted that Griffin's prior abuse was a common scheme or plan because Griffin "sexually abused [A.F.] in a similar manner consistently" in several locations. Therefore, the State's theory of Griffin's common scheme or

---

[10] See also Lough, 125 Wn.2d at 854-55 (discussing that, in analyzing a common scheme or plan, the other situation in which "the 'plan' exception to the general ban on prior bad acts evidence may arise [is] where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan").

plan was that Griffin had "devise[d] a plan and use[d] it repeatedly to perpetrate separate but very similar crimes" against A.F.  Lough, 125 Wn.2d at 854-55.  Thus, the trial court properly recognized a common scheme or plan as a basis on which it could—contingent on the State's subsequent proof, argument, and analysis—admit the proffered evidence.[11]

3

For the third step of the ER 404(b) inquiry, the State asserted that evidence of Griffin's prior sexual abuse of A.F. was relevant to demonstrating a common scheme or plan.

In the context of child sexual abuse, evidence of "the existence of a design to fulfill sexual compulsions evidenced by a pattern of past behavior" is relevant to whether the crime occurred.  DeVincentis, 150 Wn.2d at 17-18.  Indeed, if whether the crime occurred is at issue, then "evidence of substantially similar features between a prior act and the disputed act is relevant." DeVincentis, 150 Wn.2d at 20.  This is because a defendant's specific pattern of past behavior tends to suggest "that the defendant has developed a plan and has *again* put that particular plan into action."  Gresham, 173 Wn.2d at 422 (emphasis added).  Therefore, admission of evidence offered to demonstrate a common scheme or

---

[11] At the pretrial hearing, defense counsel objected to the trial court's ruling, arguing that our case law has only applied the common scheme or plan exception to similar victims in similar situations, never to the same victim in similar situations, i.e., the victim of the charged offense at issue.  Additionally, the State submitted a statement of additional authorities after oral argument in this matter, providing decisional authority from jurisdictions outside Washington that, the State asserts, support the application of a common scheme or plan to the same victim as the victim of the charged offenses in similar circumstances.  We decline to rule on this issue.  We emphasize that, in declining to address this issue, we do not rule in either party's favor but, rather, we leave it to counsel on remand to present thoughtful argument to the trial court should this issue arise during a new proceeding.

18

plan "requires substantial similarity between the prior bad acts and the charged crime." DeVincentis, 150 Wn.2d at 21.

"Sufficient similarity is reached only when the trial court determines that the 'various acts are naturally to be explained as caused by a general plan.'" DeVincentis, 150 Wn.2d at 21 (quoting Lough, 125 Wn.2d at 860). Thus, a common plan or scheme may be established by evidence that the defendant committed "'markedly similar acts of misconduct against similar victims under similar circumstances.'" DeVincentis, 150 Wn.2d at 19 (internal quotation marks omitted) (quoting Lough, 125 Wn.2d at 852). "Similarity of results is insufficient, and the evidence must show more than a general 'plan' to molest children." State v. Wilson, 1 Wn. App. 2d 73, 81, 404 P.3d 76 (2017) (citing Gresham, 173 Wn.2d at 422; Slocum, 183 Wn. App. at 453).[12] "'[C]aution is called for in application of the common scheme or plan exception.'" DeVincentis, 150 Wn.2d at 18 (quoting State v. DeVincentis, 112 Wn. App. 152, 159, 47 P.3d 606 (2002)).

Here, the State argued that this evidence was relevant to a common scheme or plan. However, the State did not provide any sufficient similarity analysis indicating that the specific acts constituting Griffin's alleged prior sexual abuse of A.F. were similar to the specific acts charged by the State to support its allegations on the discrete counts alleged.

The State failed to meet its burden at the third step of the ER 404(b) analysis. Admission of evidence offered to demonstrate a common scheme or

---

[12] See, e.g., Wilson, 1 Wn. App. 2d at 82 (reversing conviction of rape of a child because "[t]he evidence was similar only in the respect that it tended to show Wilson's sexual attraction to minors").

19

plan "requires substantial similarity between the prior bad acts and the charged crime." DeVincentis, 150 Wn.2d at 21. The State provided no substantial similarity analysis establishing the similarity of the specific acts constituting Griffin's alleged prior sexual abuse of A.F. and the acts charged by the State as establishing the sexual abuse offenses alleged in the information. Instead, it only vaguely described the nature of the prior acts.

Nonetheless, we first consider whether the State's proffered acts of sexual abuse—that Griffin sexually abused A.F. between 2010 and 2012 and sexually abused her in a similar manner consistently in different locations outside of Skagit County—bear sufficient similarity to the act alleged by the State in its charge of child molestation in the third degree.[13] We conclude that they do not.

The State's charged child molestation offense alleged as follows:

> On or about and between October 16, 2013 and October 15, 2015, in the County of Skagit, State of Washington, the above-named Defendant, being at least forty-eight (48) months older than A.F., had sexual contact with A.F., to wit: use of sexual device, who was less than sixteen (16) years old.

Here, to establish admissibility, the State would need to show that the specific acts constituting Griffin's alleged prior sexual abuse of A.F. were "markedly and substantially similar" to the charged conduct of Griffin having sexual contact with A.F. by using a sexual device.

The State did not do so. The features of Griffin's alleged prior sexual abuse of A.F., which only involve a vague description of the nature of the prior

---

[13] In reviewing whether the acts constituting Griffin's alleged prior sexual abuse of A.F. are sufficiently similar to the acts charged by the State as establishing the sexual abuse offenses alleged in the information, we analyze only the criminal charges that Griffin challenges on appeal.

acts, were not proved to be "markedly and substantially similar" to Griffin having sexual contact with A.F. by using a sexual device. Rather, the evidence provided is similar only in that it tends to demonstrate Griffin's propensity to molest A.F.

Next, in considering whether the State's proffered acts of sexual abuse bear sufficient similarity to the act charged by the State to establish its assault in the fourth degree charge alleged in the information, we again conclude that the proffered acts were not proved to be so.

The State's charged assault offense alleged as follows:

> On or about and between August 1, 2017 and November 30, 2017, in the County of Skagit, State of Washington, the above-named Defendant did intentionally assault another person, to-wit: A.F., to wit: touching victims breasts; contrary to Revised Code of Washington 9A.36.041(1).[14]

Again, the State's vague proffer that the act of Griffin sexually abusing A.F. and the act of Griffin intentionally assaulting A.F. by touching A.F.'s breasts were not proved to be sufficiently similar to demonstrate that, in engaging in these acts, Griffin was implementing a previously devised plan. Instead, the evidence presented is similar only in that it tends to demonstrate Griffin's propensity to touch A.F. sexually. Thus, the State's proffered evidence was insufficient to demonstrate a common scheme or plan.

Indeed, the absence of findings of fact by the trial court is notable. Nowhere did the court—either in writing or orally—declare what specific acts it found to be proved by a preponderance. Neither did it set forth how these acts

---

[14] As mentioned herein, the jury did not reach a verdict as to the special allegation of sexual motivation that was included as part of this count of the fourth amended information, therefore, this special allegation is not at issue on appeal.

correspond with the acts alleged in the charged counts. Thus, the necessary factual and legal determinations are absent.

To sum up, the evidence of prior acts was not proved to establish sufficient similarity to the conduct charged. This is necessary for admission as common scheme or plan evidence. To be admitted for this purpose, the evidence must show that the "'individual devise[d] a plan and use[d] it repeatedly to perpetrate separate but very similar crimes.'" Gresham, 173 Wn.2d at 422 (quoting Lough, 125 Wn.2d at 854-55). As discussed above, the vague testimony that Griffin previously "sexually abused" A.F. was similar to the charged criminal conduct only in that it tended to improperly demonstrate Griffin's propensity to molest A.F.

As noted, the trial court did not set forth findings of fact detailing the prior acts proved and how those acts supported a determination of sufficient similarity.[15] Because the State did not meet its burden to demonstrate that the proffered evidence was of a type that qualified as common scheme or plan evidence, the trial court erred by admitting the evidence on this basis.

4

As to the fourth step of the ER 404(b) inquiry, the State simply asserted that evidence of Griffin's prior sexual abuse of A.F. was more probative than prejudicial.

---

[15] Additionally, as discussed herein, the trial court did not issue any instruction to the jury as to the limited purpose for which the evidence may be considered or in any way instruct the jury on the proper use of the challenged evidence with respect to each or any count.

"'Because substantial prejudicial effect is inherent in ER 404(b) evidence, uncharged offenses are admissible only if they have substantial probative value.'" Arredondo, 188 Wn.2d at 263 (quoting Lough, 125 Wn.2d at 863). In conducting this balancing, "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982).[16]

Evidence of Griffin's prior sexual abuse of A.F. was plainly highly prejudicial to Griffin. Indeed, the trial court found that significant prejudice would result if the evidence was admitted.[17] To properly admit such evidence, however, the trial court had to reasonably determine that the probative value of the challenged evidence—offered for the purpose of demonstrating a common scheme or plan—was greater. As discussed above, however, the State's presentation—and the trial court's corresponding ruling—did not provide a basis to find that this evidence was of a type necessary to establish a common scheme or plan. Therefore, "[b]ecause the evidence did not satisfy the test of relevance to [demonstrate a common scheme or plan, the trial court's] balancing probativeness against potential for prejudice was an empty gesture." Saltarelli, 98 Wn.2d at 366.

---

[16] Because "'[o]nce the accused has been characterized as a person of abnormal bent, driven by biological inclination, it seems relatively easy to arrive at the conclusion that he must be guilty, he could not help but be otherwise.'" Saltarelli, 98 Wn.2d at 363 (quoting Slough and Knightly, *Other Vices, Other Crimes,* 41 IOWA L. REV. 325, 333-34 (1956)).

[17] A trial court tasked with an ER 404(b) analysis—and thereby tasked with issuing a limiting instruction—may consider the anticipated issuance of a limiting instruction in determining the potential for prejudice that accompanies the proper admission of other misconduct evidence.

Thus, the trial court also abused its discretion as to the fourth step of the ER 404(b) inquiry.

The State herein urged the trial court to admit evidence of Griffin's prior sexual abuse of A.F. to demonstrate "lustful disposition" and, in the alternative, to demonstrate a common scheme or plan. "Lustful disposition" is no longer an allowable basis. The trial court's reliance on the State's assertions of a common scheme or plan was not justified by this record. Accordingly, the trial court erred by admitting evidence of Griffin's prior abuse of A.F. for either of these reasons.

5

In addition to conducting the requisite analysis prior to admitting evidence of other misconduct, a trial court must, when such evidence is admitted, provide the jury with a limiting instruction.

When a trial court conducts an ER 404(b) analysis, "if the evidence is admitted, a limiting instruction is required." Arredondo, 188 Wn.2d at 257 (citing Foxhoven, 161 Wn.2d at 175.[18]

Here, the trial court was tasked with conducting an ER 404(b) analysis, and admitted evidence of Griffin's prior sexual abuse of A.F. for the purpose of demonstrating a common scheme or plan. However, once evidence of Griffin's prior sexual abuse of A.F. was introduced, the court provided no instruction to the

---

[18] In a statement of additional authority, the State relies on our Supreme Court's decision in State v. Russell, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011), for the proposition that a trial court is not required to sua sponte give a limiting instruction for ER 404(b) evidence, absent a request for such a limiting instruction, and the State asserts that the court's decision in Arredondo does not hold to the contrary. 188 Wn.2d 244. However, we take our Supreme Court's more recent pronouncement that "a limiting instruction is required" to mean exactly what it says. Arredondo, 188 Wn.2d at 257. The State's assertion thus fails.

jury cautioning them that this evidence was to be considered only for the limited purpose of demonstrating a common scheme or plan. The trial court abused its discretion by failing to provide a limiting instruction after it determined to admit the challenged evidence pursuant to ER 404(b).[19]

D

At the State's urging, we next address other possible bases that the trial court may have considered in its ruling admitting the challenged evidence.

The State urges that the trial court may have admitted the evidence of Griffin's prior sexual abuse of A.F. for the purposes of establishing the sexual motivation and timing elements of the charged criminal conduct and of completing A.F.'s testimony regarding the history of sexual abuse and her delay in disclosing the abuse. If the court did so, it erred.

1

As a preliminary matter, the record herein somewhat unclearly suggests that the State may have urged the trial court to admit the proffered evidence in order to establish the sexual motivation—i.e., intent—element of the charged criminal conduct. However, if the trial court relied on the State's presentation to admit the challenged evidence for the purpose of proving the sexual motivation element of the charged conduct, it erred.

---

[19] On remand, should either party seek to introduce evidence of prior bad acts and should the trial court properly apply an ER 404(b) inquiry and determine that such evidence should be admitted, the trial court must also issue a limiting instruction to the jury. The parties retain discretion to suggest to the trial court the language of such an instruction in order to address any issue that might arise.

Here, the State, in its presentation to the trial court under the rubric of a common scheme or plan, asserted that the proffered evidence was "relevant" to proving the sexual motivation element of the charged criminal conduct. In so doing, the State failed to present its sexual motivation argument as a separate and independent basis on which to admit the proffered evidence. In addition, the State failed to substantiate its sexual motivation argument with the analysis mandated by our decisional authority. Thus, the State did not present to the trial court an adequate basis on which it could have properly admitted the evidence as proof of the sexual motivation element of the charged criminal conduct.

As an initial matter, ER 404(b) sets forth proof of intent as an allowable purpose on which evidence of other crimes, wrongs, or acts may be admitted. Therefore, proof of intent is properly presented and considered as a distinct purpose at the second step of the ER 404(b) inquiry.[20] See Vy Thang, 145 Wn.2d at 642 (citing Lough, 125 Wn.2d at 853).

Here, the State did not assert that it sought to admit the challenged evidence for the purpose of proving the sexual motivation element of the charged offenses. Instead, it vaguely asserted that proof of the sexual motivation element was "relevant" to its stated purpose of demonstrating a common scheme or plan.[21] Thus, the State failed to assert proof of the sexual motivation element as

---

[20] Demonstrating a common scheme or plan and demonstrating intent are distinct purposes for which a party may seek to admit evidence under ER 404(b). Each have unique analytical frameworks and should be analyzed under ER 404(b) separately, with care and attention as to the reasons underlying the relevancy of the evidence, offered for each or either purpose, to proving the charged criminal conduct.

[21] The State presented no argument or authority in support of its tendered proposition that intent was to be considered as "relevant" to establishing a common scheme or plan.

a separate and independent basis on which the proffered evidence could be admitted.

Additionally, even if the State might have presented its proof of the sexual motivation element argument to the trial court as an independent basis on which the trial court could admit the evidence, the State did not provide adequate support for that argument.

Prior misconduct evidence is relevant to proving the intent element of the charged crime when the prior misconduct evidence is premised on "a logical theory, *other than propensity*, demonstrating how the prior acts connect to the intent required to commit the charged offense." Wade, 98 Wn. App. at 334. This is because "[t]hat a prior act 'goes to intent' is not a 'magic [password]' whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in [its name].'" Wade, 98 Wn. App. at 334 (alterations in original) (quoting Saltarelli, 98 Wn.2d at 364). Relatedly, the third step of our ER 404(b) inquiry involves analyzing whether the prior misconduct evidence is relevant to proving the charged criminal conduct when offered for the specific purpose asserted at the second step of the inquiry. Vy Thang, 145 Wn.2d at 642 (citing Lough, 125 Wn.2d at 853). Thus, after a proponent asserts that the proffered evidence is admissible for the purpose of proving intent, the third step of the ER 404(b) inquiry places on the proponent the burden of providing a logical theory, other than propensity, that the proffered evidence is relevant to establishing the intent element of the charged criminal conduct. Wade, 98 Wn. App. at 334.

The State did not provide to the trial court a logical theory, other than propensity, demonstrating that the specific acts provided in the challenged evidence connect to the sexual motivation required to commit the charged criminal offenses. Thus, the State did not meet its burden of establishing that the challenged evidence, offered as proof of intent, was relevant to proving the charged criminal conduct.

Indeed, by only invoking "intent" without providing any substantive analysis, the State did not provide the trial court with any analysis as to how the specific acts of Griffin's alleged prior sexual abuse of A.F. connect to the sexual motivation required to commit any of the charged sexual abuse offenses (other than propensity). The State therefore failed to provide the trial court with the analytical premise necessary for evidence offered to prove intent to be relevant to the charged offenses.[22]

Additionally, the record does not reflect that the trial court conducted a separate, independent, and substantial ER 404(b) analysis of whether the challenged evidence was admissible to establish the sexual motivation element of the charged criminal conduct. Rather, the court appeared to respond to the State's presentation by adopting the State's analysis and finding only that the challenged evidence was "relevant to the sexual gratification element." As discussed herein, the State's analysis was inadequate as a basis on which to admit the challenged evidence. Accordingly, if the trial court admitted the

_____

[22] Nor does the record support either that the State presented to the trial court, or that the trial court explicitly conducted, the ER 404(b) inquiry balancing test to determine whether the evidentiary value of evidence offered to demonstrate the sexual motivation element of the charged criminal conduct was more probative than prejudicial.

28

challenged evidence for the purpose of proving the sexual motivation element of the charged criminal conduct in reliance on the State's analysis, it erred.

2

The record further—and again somewhat unclearly—suggests that the State may have urged the trial court to admit the proffered evidence in order to establish the timing element of the charged criminal conduct. If so, it erred.

As with its sexual motivation argument, the State presented this argument to the trial court under the rubric of its common scheme or plan presentation, vaguely asserting that the proffered evidence was "relevant" to proving the timing element of the charged criminal conduct. However, the State failed to present this argument as a separate and independent basis on which to admit the proffered evidence and additionally failed to substantiate this argument with analysis. Thus, the State did not present an adequate basis on which the trial court could have properly issued a ruling to admit the evidence to prove the timing element.

Proof of the timing element of the charged offense may potentially be an "other purpose" to admit evidence of other crimes, wrongs, or acts pursuant to ER 404(b), and, if so, properly offered and considered at the second step of our ER 404(b) inquiry. Vy Thang, 145 Wn.2d at 642 (citing Lough, 125 Wn.2d at 853). For evidence offered for that purpose to be admissible, however, it would need to be premised on "a logical theory, *other than propensity*, demonstrating how the prior acts connect to the [element] required to commit the charged offense." See Wade, 98 Wn. App. at 334.

29

Here, the State did not explicitly assert that it sought to admit the challenged evidence for the purpose of proving the timing element of the charged offenses. Instead, it vaguely asserted that the timing element was "relevant" to its stated purpose of demonstrating a common scheme or plan.[23] Additionally, the State did not provide to the trial court a logical theory, other than propensity, demonstrating that the specific acts described in the challenged evidence (to the extent that there were any) connected to the timing elements required to establish the charged offenses. Thus, the State did not meet its burden of establishing that the challenged evidence, offered as proof of the timing element, was relevant to proving the charged criminal conduct.

Moreover, the record again does not reflect that the trial court conducted a separate, independent, and substantial ER 404(b) analysis in which it determined, in this instance, that the challenged evidence was admissible to establish the timing element of the charged criminal conduct. Additionally, as discussed herein, the State did not provide the trial court with analysis as to how the specific acts of Griffin's alleged prior sexual abuse of A.F. connect to the timing element required to commit any of the charged sexual abuse offenses.[24] Thus, if the trial court relied on the State's analysis to admit this evidence for that purpose, it erred.[25]

---

[23] The State presented no argument or authority in support of its proposition that the timing element was to be considered as "relevant" to establishing a common scheme or plan.

[24] Nor does the record support either that the State presented to the trial court, or that the trial court explicitly conducted, the ER 404(b) inquiry balancing test to determine whether the evidentiary value of the evidence offered to demonstrate the timing element of the charged criminal conduct was more probative than prejudicial.

[25] The record somewhat unclearly suggests that the trial court, on its own initiative, may have determined that the prior sexual abuse was connected to the charged crimes on the basis

3

The record further—and once again somewhat unclearly—suggests that the State may have urged the trial court to admit the proffered evidence in order to "complete" A.F.'s testimony.

Similar to its other arguments discussed herein, the State asserted that the completeness of A.F.'s testimony was "relevant" when offered to demonstrate a common scheme or plan. This was so, the State averred, because

> [t]he evidence of common scheme or plan shows that the incidents charged in this case are not isolated incidents, but a pattern of behavior that the defendant engaged in over time. This directly relates to the victim's credibility. The duration and extent of sexual abuse also bears on the reason for the victim's delayed disclosure. The extent of abuse over time also bears on the victim's fear of the defendant and the control he held over the victim.

The State thus sought to admit the proffered evidence to bolster A.F.'s credibility at trial. However, our Supreme Court has instructed that "'in the absence of an attack upon credibility[,] no sustaining evidence is allowed.'" State v. Bourgeois, 133 Wn.2d 389, 400, 945 P.2d 1120 (1997) (alteration in original) (quoting 1 MCCORMICK ON EVIDENCE § 47, at 172 (John W. Strong ed., 4th ed.1992)).[26]

---

that "it is going to be very hard for [A.F] to parse it out to exactly what it was, what incident took place in Skagit County." However, the State did not assert to the trial court that A.F. would have difficulty parsing out when the charged conduct occurred. Therefore, this was not at issue at the time that the trial court made its ruling. Evidence must make more or less likely a fact at issue to be relevant. See Wade, 98 Wn. App. at 334. Thus, to the extent that the trial court admitted the proffered evidence for this purpose, it erred.

[26] The court in Bourgeois set forth the following in accordance with its instruction: EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS § 86 (2d ed. 1989) ("The general common-law rule is that the proponent may not bolster the witness's credibility before any attempted impeachment."); United States v. Holmes, 26 F. Cas. 349, 352 (C.C.Me.1858) ("No principle in the law of evidence is better settled than . . . the rule, that testimony in chief of any kind, tending merely to

The State herein did not assert that the proffered evidence was admissible on the basis that A.F.'s credibility was an inevitable, central issue in the case.[27] The State did not assert that the evidence was admissible because Griffin planned to directly attack A.F.'s credibility. Indeed, Griffin's defense before trial was general denial. Therefore, the State did not provide the trial court with the necessary predicate—e.g., Griffin's planned or inevitable attack on A.F.'s credibility before trial or actual attack at trial—on which to admit the proffered evidence for the purpose of bolstering A.F.'s testimony.

Additionally, the record does not reflect that the trial court conducted a separate, independent, and substantial ER 404(b) analysis of whether the proffered evidence was admissible to bolster A.F.'s testimony. Instead, similar to its other rulings, the trial court adopted the State's analysis and found only that the proffered evidence was relevant to the "completeness of A.F.'s testimony." Therefore, to the extent that the trial court admitted the challenged evidence to sustain A.F.'s credibility in the absence of an attack on A.F.'s credibility, the trial court erred.

---

support the credit of the witness, is not to be heard except in reply to some matter previously given in evidence by the opposite party to impeach it."). In State v. Froehlich, 96 Wn.2d 301, 305, 635 P.2d 127 (1981), we endorsed as a "correct general statement of the law" that "corroborating evidence is admissible only when a witness' credibility has been attacked by the opposing party and, even then, only on the facet of the witness' character or testimony which has been challenged." Similarly, in State v. Petrich, 101 Wn.2d 566, 574, 683 P.2d 173 (1984), we noted that "corroborating testimony intended to rehabilitate a witness is not admissible unless the witness's credibility has been attacked by the opposing party."

133 Wn.2d at 400-01 (alteration in original).

[27] See State v. Hakimi, 124 Wn. App. 15, 24-25, 98 P.3d 809 (2004).

Thus, despite the State's appellate urging that there were multiple possible bases that the trial court may have considered to justify its ruling admitting the challenged evidence, the State did not present the trial court with adequate proof, analysis, and argument for these bases to be availing. Additionally, the record does not reflect that the trial court issued separate, independent, and substantive evidentiary rulings as to any of these possible bases. Accordingly, if the trial court admitted the challenged evidence in reliance on the State's presentation of these possible bases, the trial court abused its discretion in so doing.

E

The State next urges that we address other possible bases for admissibility that were neither presented to the trial court nor considered by the trial court in its ruling admitting the challenged evidence, asserting for the first time on appeal that the evidence of Griffin's prior sexual abuse of A.F. was admissible to show Griffin's motivation, intent, plan, and opportunity to groom A.F.

The record does not reflect that these bases were presented to the trial court as purposes for which the challenged evidence could be admitted. Thus, the record does not set forth an exercise of trial court discretion for us to review in this regard. See DeVincentis, 150 Wn.2d at 17 (citing Lough, 125 Wn.2d at 856). Therefore, the record has not been sufficiently developed for these assertions to be fairly considered on appellate review. RAP 2.5(a).

Accordingly, we decline to consider them.

F

The trial court explicitly relied on common scheme or plan as a basis to admit evidence that Griffin had previously sexually abused A.F. As to this basis, the trial court abused its discretion. The State urges that the trial court may have also relied on additional bases to admit this evidence. However, the State did not provide adequate argument or evidence in support of these alternatives, and the trial court did not provide analysis of these bases. Therefore, this evidence was not properly admitted for these reasons. Additionally, the trial court erred by admitting this evidence without providing an instruction to the jury limiting the purpose or purposes for which the jurors could consider this evidence.

We now turn to whether the trial court's error was harmless.

When evidence is erroneously admitted in violation of ER 404(b), "we apply the nonconstitutional harmless error standard." State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014) (citing Gresham, 173 Wn.2d at 433). "This requires us to decide whether 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Gunderson, 181 Wn.2d at 926 (internal quotation marks omitted) (quoting Gresham, 173 Wn.2d at 433). "[W]here there is a risk of prejudice and 'no way to know what value the jury placed upon the improperly admitted evidence, a new trial is necessary.'" Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 673, 230 P.3d 583 (2010) (quoting Thomas v. French, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983)); accord State v. Murphy, 7 Wn. App. 505, 508-10, 500 P.2d 1276 (1972). There is a heightened probability of prejudice in cases involving sex offenses.

34

See, e.g., State v. Gower, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014) ("[T]he potential for prejudice from admitting prior acts is 'at its highest' in sex offense cases." (internal quotation marks omitted) (quoting Gresham, 173 Wn.2d at 433)); DeVincentis, 150 Wn.2d at 24 (recognizing that "'prejudice [reaches] its loftiest peak'" in "'deciding the issue of guilt or innocence in sex cases'" (internal quotation marks omitted) (quoting Saltarelli, 98 Wn.2d at 364)).

Here, it is reasonably probable that, had the evidence of Griffin's sexual abuse of A.F. not been admitted, the outcome of the trial would have been different. This is due to both the heightened probability of prejudice where prior act evidence is admitted in sex offense cases, further heightened due to the prior act evidence herein involving sexual abuse of a minor only 10 years old, and heightened still by the abuse in question involving the same victim as the victim of the charged offenses. Additionally, there was no instruction provided to the jury restricting its consideration of this evidence to a purpose other than propensity. Because there is a reasonable probability that the outcome of the trial would have been materially affected had evidence of Griffin's prior abuse not been admitted, the trial court's error was not harmless.

Accordingly, we reverse and remand this matter for a new trial. [28]

---

[28] We reverse and remand this issue on the basis that the evidence of Griffin's prior misconduct was not properly admitted for the reasons stated herein. We cannot predict the evidence, questioning, or legal theories that might be advanced or that might open the door to otherwise inadmissible evidence in a new trial. Therefore, we presume that, on remand, should the need arise, the trial court will properly apply the rules of evidence and our existing case law to resolve issues of admissibility pursuant to the evidence, questioning, and legal theories before it.

Additionally, because of the manner in which we resolve this appeal, we need not address in any great depth Griffin's other assignments of error. We discuss each briefly.

Griffin assigned error to the absence of a unanimity instruction for one of the charged offenses. We cannot say whether the State will present evidence or elicit testimony in a new trial

Reversed and remanded.

_Dwyer, J._

WE CONCUR:

_Birk, J._          _Mann, J._

---

in the same manner as during the trial here at issue, or whether the State will again elect not to request a jury unanimity instruction. Therefore, we decline to address this assignment of error.

Griffin next assigned error to the trial court's exclusion of evidence of certain celebratory cards. We cannot say whether the evidence presented in a new trial would lay an adequate foundation for Griffin to introduce evidence of celebratory cards or, for that matter, whether it will be necessary to Griffin's theory of the case to introduce this evidence at a new trial. Therefore, we decline to address this assignment of error.

Griffin further assigned error to several of the prosecutor's statements at trial and in closing argument. We cannot say whether in a new trial the prosecutor's statements to witnesses or statements to the jury in closing argument would be similar or would constitute improper vouching. Therefore, we decline to address this assignment of error.

Griffin lastly assigned error to the terms set forth in the judgment and sentence entered on his conviction in the trial here at issue. We note that Griffin regains the presumption of innocence in a new trial. We presume that, in the event of a subsequent conviction, the trial court will enter judgment and sentence in accordance with applicable decisional and statutory authority.