IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85664-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| JUAN GABRIEL FEGOSO URIBE, | UNPUBLISHED OPINION |
| Appellant. | |

DÍAZ, J. — A jury convicted Juan Gabriel Fregoso Uribe[1] of one count of indecent liberties and one count of child molestation in the first degree committed against his goddaughter. Uribe now argues the trial court erred by admitting and reading into the record the transcript of a forensic interview, which the victim, PPM, gave two years after the alleged sexual contact, and by admitting the testimony of ANOS, [2] who testified to a similar incident in a separate trial. Although, as the State concedes, the admission of the transcript may have been improper, and the reading of the evidence "unconventional," we find any error harmless, affirm the conviction, and remand this matter to the trial court to address only whether and under what terms Uribe may have no contact with his biological children.

---

[1] Counsel refers to him as Uribe, so we do the same.
[2] We refer to PPM and ANOS by their initials to protect their privacy.

## I.   BACKGROUND

Uribe was PPM's godfather.  At trial, PPM described that in May 2016, when she was approximately 8 years old, Uribe separated her from some other children at a family gathering at his home, and put PPM's hand on his genitals.  Uribe held PPM's hand to his genitals for an undetermined amount of time before he ejaculated.  Uribe told PPM not to tell anyone.

Afterward, PPM's parents observed that she became withdrawn and often would not leave her room.  Approximately two years later, in December 2018, PPM disclosed the incident to a school counselor, who then alerted PPM's parents, who alerted law enforcement.  As will be discussed in more detail below, in January 2019, PPM participated in a forensic interview where she described the incident.

Uribe was arrested, and charged with one count of indecent liberties (by forcible compulsion) and one count of child molestation in the first degree.

At trial, PPM, her parents, and the forensic interviewer testified on behalf of the State.  Additionally, the trial court admitted the trial testimony of ANOS, who had testified to a similar incident with Uribe, which was the subject of a separate trial.  Uribe made several evidentiary objections prior to and during the trial.  We will discuss these objections in subsequent sections.

A jury found Uribe guilty as charged.  The court sentenced Uribe to 198 months confinement for the first count, and 198 months for the second count, running concurrently.  The trial court imposed conditions of community custody including, among other things, that Uribe have no contact with minors under the

age of 18 without prior approval from his community correction officer. Uribe timely appeals.

## II.    ANALYSIS

A.    Admission and Reading of PPM's Forensic Interview

   1. Additional Factual and Procedural Background

During trial, the State asked PPM about an incident prior to the alleged crime when, while at Uribe's house, she walked by the bathroom, with its door open, and may have seen Uribe inside urinating. PPM testified she did not remember this incident. The State again asked PPM if she remembered a time when she "thought the defendant saw [her from] . . . the bathroom." Uribe objected, on the basis of hearsay, and the parties held a colloquy outside the jury's presence. The State moved the court to permit the State to show PPM a video recording of her forensic interview from 2018, stating "I'm directly confronting her with her own statements, either to refresh her recollection or impeach her." Uribe objected, arguing the State had asked and PPM had answered this question. Overruling the objection, the court allowed the State to show PPM the video to refresh her recollection.

After showing PPM the video, the State continued its questioning:

Q. . . . do you remember having an interview regarding this case previously?
A. Yes. . . .

Q. And do you remember that interview taking place?
A. Yes.

Q. And did that interview . . . take place closer in time to the incidents

Q. that you've been describing today? . . .
A. Yeah.

Q. And was your memory at the time of this interview . . . better or worse than it is today?
A. I think better. . . .

Q. Did you tell her everything that you remembered accurately the way that you remembered it?
A. I'm pretty sure, yes, I do.

The court then played the recorded forensic interview excerpt and the State asked:

Q. . . . [D]o you remember that conversation?
A. A little bit.

Q. Does that help refresh your recollection about *the timeline* of what occurred at all or no?
A. Not really.

(Emphasis added.)

The State then moved to admit the transcript of the interview, arguing it was admissible as a recorded recollection under ER 803(a)(5):

> I think she very clearly did testify today that she remembered that interview, remembered, uh, accurately detailing what she remembered at the time, and she said that that incident had occurred more closely in time to the incident that she discussed today *and that her memory at that time was better than her memory would be today*.

(Emphasis added.) The State again sought to admit the transcript into evidence, solely to establish the time frame of the alleged incident. The court admitted the transcript for that limited purpose under ER 803(a)(5).[3]

---

[3] Under ER 803(a)(5), a recorded recollection is "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown

4

2.  Admission of the Transcript Under ER 803(a)(5)

Both Uribe and the State agree the trial court should not have admitted the excerpts of PPM's forensic interview as substantive evidence under the recorded recollection exception of ER 803(a)(5).  The State concedes that the testimony does not meet the requirements of ER 803(a)(5) because at trial it failed to establish that the incident was fresh in PPM's memory at the time of the interview.

Accepting the State's concession, and assuming without deciding that the trial court erred by admitting the transcript of PPM's forensic interview, we nonetheless conclude that the error was harmless.

Errors resulting from the violation of an evidentiary rule are not errors of constitutional magnitude.  State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).  An appellant bears the burden of establishing that the error was not harmless, i.e., that it was prejudicial.  State v. Barry, 183 Wn.2d 297, 317, 352 P.3d 161 (2015).  To be "prejudicial" means that "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"  Id. at 303 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).  "In assessing whether the error was harmless, we must measure the admissible evidence of the defendant's guilt against the prejudice, if any, caused by the inadmissible evidence."  Id.

In his briefing, Uribe, who did not file a reply, does not explain in any detail why the alleged error was prejudicial, i.e., how the outcome would have been

---

to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly."

different had the transcript not been admitted for its limited purpose. On that basis alone, we could deny this assignment of error. Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

At oral argument, however, Uribe cogently explained why he believed the error was not harmless. First, Uribe claims that, when the trial court admitted the transcript, it thereby bolstered PPM's credibility in the eyes of the jury. State v. Uribe, No. 85664-2-I (Nov. 14, 2023) at 1 min., 19 sec., through 1 min., 36 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023111164/?eventID=2023111164. Specifically, Uribe avers that the admission of this evidence bolstered PPM's credibility because the statements supported the State's description of the timeline of events, first made in its opening argument; namely, that the bathroom incident shortly pre-dated and prompted Uribe's initiation of sexual contact with her. Wash. Ct. of Appeals oral argument, supra at 2 min.,18 sec., through 2 min., 58 sec. Uribe asked rhetorically, "if they didn't think they needed it, then why introduce the forensic interview at all?" Wash. Ct. of Appeals oral argument, supra at 3 min. 20 sec., through 3 min., 45 sec.

In full candor to the court, Uribe, however, further acknowledged two further important facts about the testimony. First, Uribe conceded that the bathroom incident and the charged crime were two separate occurrences. Wash. Ct. of Appeals oral argument, supra at 4 min., 41 sec., through 4 min., 58 sec. That is, while they may be logically and temporally connected, the charged crime was

6

evidentiarily and legally distinct, and its occurrence did not depend on any fact adduced in the transcript. Second, Uribe "conceded" that PPM's statements in the transcript were ambiguous and included qualifiers. Wash. Ct. of Appeals oral argument, supra at 3 min., 51 sec., through 3 min., 57 sec. In other words, even if there were some legal or evidentiary relationship between the facts stated in the transcript, those facts had such a vague and tenuous connection to the charged crime that they likely had no impact on the ultimate issues. Both of these facts undermine the claim that Uribe was prejudiced.

Additionally, we hold that the admission of the testimony was harmless for the further reason that it was used for a very limited purpose: to generally establish the approximate time period in which Uribe abused PPM. That is, the transcript of the forensic interview simply situated the first event at Uribe's house within a timeline of events, i.e., in relation to PPM's communion and its approximate date. Otherwise, PPM had already testified to the specific acts Uribe committed and that she was eight years old, which are unchallenged and substantively establish the elements of indecent liberties and molestation of a child in the first degree. Moreover, the State only referred to the bathroom incident in one sentence, in passing, in its opening and closing arguments, again simply to support a general timeframe of events.

For all these reasons, Uribe did not carry his burden to establish there was a reasonable probability that admitting the interview materially affected the outcome of the trial. Thus, any error was not prejudicial. Barry, 183 Wn.2d at 317-

7

318.

### 3. Reading the Transcript Under ER 803(a)(5)

We conclude the trial court did not erroneously comment on the merits of the case when it read excerpts of PPM's forensic interview and the underlying rule of evidence into the record.

#### a. Law

"Article IV, section 16 of the Washington Constitution provides that '[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.' This constitutional provision prohibits a judge 'from conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" State v. Bass, 18 Wn. App. 2d 760, 802, 491 P.3d 988 (2021), review denied, 198 Wn.2d 1034, 501 P.3d 148 (2022) (alteration in original) (quoting State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006)). "The purpose of article IV, section 16 is to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." State v. Sivins, 138 Wn. App. 52, 58, 155 P.3d 982 (2007).

We apply two steps to determine if a judicial comment warrants reversal. Bass, 18 Wn. App. 2d at 802. "First, we examine the facts and circumstances of the case to determine whether a court's conduct or remark rises to a comment on the evidence." Id. If we conclude the court improperly commented on the evidence, we presume the comment is prejudicial, and the State bears the burden to show the defendant was not prejudiced. Id. at 803 (citing Levy, 156 Wn.2d at

721).

A court comments on the evidence "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." Sivins, 138 Wn. App. at 58 (quoting State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995)). A judge comments even if they merely imply their personal feelings. Sivins, 138 Wn. App. at 58.

b. Discussion

Again, after questioning PPM about the contents of her forensic interview, the State moved to admit the transcript, which the court granted. The court then offered to the parties to read the relevant excerpt of the transcript to the jury and, when it did so, it also read the rule itself, explaining to the jury the court would admit the evidence only in part and only for a limited purpose.

Specifically, the trial court said to the jury, "you're about to hear some evidence that I'm going to read to you." After reading ER 803(b)(5), the court explained "I'm going to read these provisions from the interview that the previous witness was just referencing . . . that I believe took place on January 31st, 2019." The court then read the transcript itself.

Uribe complains about each step the judge took, claiming that the court's introductory remarks "convey[ed] a feeling to the jury about the truth value of the statement," that the court's reading of the rule was "not normally the providence of the jury to concern itself with," and that reading the transcript gave the court's

9

"imprimatur of its veracity."[4]  We disagree.

While it is true that the court referred to the transcript as "evidence" and read the rule, nowhere does the trial court suggest its own personal "feeling[s]" about the "truth value" of this evidence.  Lane, 125 Wn.2d at 838.  In other words, Uribe does not meet the first step of the analysis because nothing in the judge's comments "convey[ed] to the jury his or her personal attitudes toward the merits of the case," let alone "instruct[ed] a jury that matters of fact have been established as a matter of law."  Bass, 18 Wn. App. 2d at 803.  As in Bass, the trial court's explanation of a rule of evidence, there ER 402, does not reveal its attitudes towards the veracity of the evidence or the overall merits of the charges.  Id. at 804 (citing Sivins, 138 Wn. App. at 58).

Furthermore, the trial court issued the standard instructions at the beginning and end of trial, which would cure any suggestion of its "feelings" about the evidence.  Lane, 125 Wn.2d at 838.  Specifically, the court stated, "[I]t would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence . . . if it appear[ed] to you that I have indicated my personal opinion . . . you must disregard this entirely."  We have held that a court's instructions that a jury disregard improper comments on the evidence can cure error.  Hizey v. Carpenter, 119 Wn.2d 251, 271, 830 P.2d 646 (1992).  And,

---

[4] Uribe objected to the admission of the evidence itself but not to the court's reading of it or the rule.  On appeal, Uribe concedes it is not "clear" whether he objected to the trial judge reading the transcript.  But he argues that we may review the assignment of error because it is of constitutional magnitude as it violates article 4, section 16.  The State does not contest this argument and, thus, we consider Uribe's claims.

we presume the jury obeys the court's instructions.  Id.

At oral argument, Uribe further analogized the reading of ER 803 to taking judicial notice of those facts because the language of the rule suggests that it has been proven that PPM's memory was fresh when the statement was made, and that statement captured the memory correctly.  Wash. Ct. of Appeals oral argument, supra at 20 min., 43 sec., through 21 min., 33 sec.; ER 803(a)(5) (proponent must show the statement was "made or adopted by the witness when the matter was fresh in the witness' memory and [] reflect that knowledge correctly.").

As a general matter, however, when a court's statement to the jury "'does no more than accurately state the law pertaining to an issue in the case[, it] does not constitute an impermissible comment on the evidence. . . .'" State v. Higgins, 168 Wn. App. 845, 859-60, 278 P.3d 693 (2012) (quoting State v. Ciskie, 110 Wn.2d 263, 282-83, 751 P.2d 1165 (1988)).  That is precisely what occurred here; the court read the rule verbatim into the record.  As in in Higgins, the court here "conveyed no attitude toward the merits of the case when he provided the jury with" its rationale for admitting this evidence.  Id. at 860. [5]

---

[5] As indicated by the State, it is "unconventional" for a trial court to read the recorded recollection, let alone the underlying rule into the record together.  State v. Uribe, No. 85664-2-I (Nov. 14, 2023) at 11 min., 3 sec., through 11 min., 18 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023111164/?eventID=2023111164.  Going further, we believe it is not typically best practice, even if the evidence is admissible, for the court to read the evidence, even if ER 803(a)(5) is silent as to who should read the evidence and does not prohibit the reading of the rule.  The latter may be so because jurors should "not be concerned about the reasons for [a court's] rulings."  11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.01 (5th ed. 2021) (WPIC).

11

In short, the court did not improperly comment on the evidence and, even if one of its actions was improper, the error was cured through its instructions.

B.      ANOS's Testimony Under ER 404(b)

We conclude the trial court did not abuse its discretion when it allowed ANOS to testify about Uribe's crimes against her, for which he had been convicted prior to the instant trial.  We hold the trial court correctly admitted and allowed the testimony as showing a common plan or scheme and not as evidence of Uribe's propensity to engage in sexual contact with minors.

1.  Additional Factual Background

Before trial, the State moved to introduce evidence of Uribe's contemporaneous sexual abuse of ANOS, which a jury found Uribe guilty of in a separate, 2018 trial.  State v. Uribe, No. 52054-1-II, slip op. at 16 (Wash. Ct. App. March 17, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2052054-1-II%20Unpublished%20Opinion.pdf.  In that other case, ANOS was of a similar age to PPM, and Uribe was also her godfather.

In the ER 404(b) hearing in PPM's case, the State sought to introduce testimony by ANOS about "things she has personal knowledge of in the very limited capacity of what would be relevant to this case" to show Uribe engaged in the same scheme or plan to abuse ANOS as he did PPM.  Uribe registered a standing objection.  The trial court allowed ANOS's testimony, ruling as follows:

> [I]n this case the State has cited the similarities, the age of the victim
> . . . what could be perceived as some kind of grooming or secreting
> behavior to get the alleged victim . . . in private to reinforce some sort
> of pact for silence . . . I'm going to . . . allow the evidence as long as

12

we have a fairly sanitized version of what's going to come in.

At the trial, ANOS testified to Uribe being a family friend and her godfather, whose home she and her family frequented. ANOS testified that when she was between 6 and 8 years old, Uribe took her to his room, grabbed her hand, and held it onto his genitals. She did not testify about other forms of sexual abuse by Uribe, or other unrelated matters at issue in her prior case.

2. Law

ER 404(b) prohibits admitting evidence to prove a defendant has a criminal propensity:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting ER 404(b)).

"The State must meet a substantial burden when attempting to bring in evidence of prior bad acts under one of the exceptions to this general prohibition." Id. The court may admit evidence of prior bad acts, as relevant here, only when the bad acts are "'(1) proved by a preponderance of the evidence, (2) admitted for the *purpose of proving a common plan or scheme*, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.'" Id. (emphasis added) (quoting State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995)).

As to the second factor (the purpose), a court may admit other prior bad acts to show a "common scheme or plan" where, among other ways the "prior acts

[provide] evidence of a single plan used repeatedly to commit separate but very similar crimes." Id. at 19 (quoting Lough, 125 Wn.2d at 856). The prior acts and charged crimes must be "'*markedly similar* acts of misconduct against similar victims under similar circumstances' . . . '[which] are naturally to be explained as caused by a general plan of which they are the individual manifestations.'" Id. (Quoting Lough, 125 Wn. 2d at 860) (emphasis added). Such evidence may be "offered to show that the defendant has developed a plan and has again put that particular plan into action." State v. Gresham, 173 Wn.2d 405, 422, 269 P.3d 207 (2012). "Factors relevant to similarity include geographical proximity and commission of the crimes within a short time frame." State v. Thang, 145 Wn.2d 630, 643, 41 P.3d 1159 (2002).

"A trial court's decision to admit evidence of prior bad acts is reviewed for abuse of discretion." State v. Denham, 197 Wn.2d 759, 771, 489 P.3d 1138 (2021).

3. Discussion

Uribe argues that the trial court abused its discretion by admitting ANOS's testimony because the frequency and details of Uribe's sexual contact with her differed from his contact with PPM. He does not, however, cite to any authority to support his assertion that any differences between the number or precise type of sexual contact is fatal to the admission of this evidence. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020)

(citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

And Uribe is simply incorrect about the similarities between the actions against PPM and ANOS. Those similarities include that:

- both children were Uribe's goddaughters;

- both children were of a similar age;

- the events occurred during a similar time period;

- the conduct occurred at Uribe's home while other children were present, but Uribe separated ANOS and PPM from them; and

- Uribe initiated the sexual contact by placing their hands on his penis and not permitting their removal.

These facts provide ample support for a court to find a "markedly similar" pattern of conduct toward the two children, which in turn establishes that Uribe had "a single plan used repeatedly to commit separate but very similar crimes." DeVincentis, 150 Wn.2d at 19. Thus, the trial court did not abuse its discretion in admitting ANOS's testimony under ER 404(b). Denham, 197 Wn.2d at 771.

C.    No Contact with Minors

Uribe's judgment and sentence prohibits him from contact with minors under 18 "without approval of sex offender treatment provider and accompanied by a DOC approved chaperone." At his sentencing hearing, the superior court did not address, on the record, this condition of community custody nor how it would implicate Uribe's ability to parent his biological children who are under 18 years old.

A sentencing court may not impose a lifetime no contact order with all

15

minors without considering, on the record, its implication of Uribe's constitutional right to parent his own children.  In re Rainey, 168 Wn.2d 367, 382, 229 P.3d 686 (2010).  We accept the State's concession that the trial court erred by barring Uribe from contact with all minors, to the extent that it made no exception for contact with his own children.

Thus, we strike this condition and remand this matter to the superior court to examine, on the record, whether to impose this condition or how to appropriately tailor it to consider Uribe's constitutional right to parent.[6]

D.    Statement of Additional Grounds

In addition to his attorney's briefing on appeal, Uribe himself submitted a statement of additional grounds.  Statements of additional grounds ("SAG") are permitted by RAP 10.10.  The rule serves to ensure that an appellant can raise issues in their criminal appeal that may have been overlooked by their attorney.  Recognizing the practical limitations many incarcerated individuals face when preparing their own legal documents, RAP 10.10(c) does not require that the statement be supported by reference to the record or citation to authorities.  However, it does require that the appellant adequately "inform the court of the nature and occurrence of alleged errors."  RAP 10.10(c).  It also relieves the court of any independent obligation to search the record in support of the appellant's claims, making it prudent for the appellant to support their argument through

---

[6] This court reached a similar conclusion in the separate case regarding ANOS, and struck and remanded a similar conclusion by that sentencing court.  State v. Uribe, No. 52054-1-II, slip op. at 12 & 15 (Wash. Ct. App. March 17, 2020) (unpublished),        https://www.courts.wa.gov/opinions/pdf/D2%2052054-1-II%20Unpublished%20Opinion.pdf.

reference to facts. RAP 10.10(c).

We address those sections of Uribe's SAG which have not been addressed above or are not duplicative of his appellate counsel's arguments. Namely, Uribe contests the sufficiency of the evidence for his conviction, and other matters. We conclude that Uribe did not carry his burden to show the evidence against him was insufficient.

In determining the sufficiency of the evidence, our standard of review is "whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." State v. Rempel, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990) (citing State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).

A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Uribe contends the jury did not have sufficient evidence to find him guilty beyond a reasonable doubt for the counts against him. Viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have found that PPM's testimony, and that of her parents and the forensic interviewer, credible, which establishes the elements of the claim. Otherwise, Uribe does

nothing more than (a) question PPM's credibility, and that of her parents; and (b) make unsubstantiated claims of bias against the trial court, as to evidentiary matters already addressed by his counsel on appeal.[7] When we view the evidence in the light most favorable to the State, as we must, Uribe has not met his burden to show a rational jury could not find him guilty of the crimes for which he was convicted. Salinas, 119 Wn.2d at 201. Therefore, his challenge fails.

### III.    CONCLUSION

We affirm Uribe's judgment and sentence, and remand this matter to the superior court to examine, on the record, whether to reimpose a no contact condition and how to appropriately tailor such a condition consistent with Uribe's constitutional right to parent his minor biological children.

Díaz, J.

WE CONCUR:

Feldman, J.                          Mann, J.

---

[7] We decline to address the substance of Uribe's claims regarding PPM's parents' alleged improper motive for reporting the incident to law enforcement or the judge's alleged bias because they are not supported by any evidence in the record before us. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered).